JAMES T. BRAXTON, as Administrator of EUGENE BRAXTON, Deceased, Appellant, v. BENJAMIN S. MENDELSON, Respondent.

Negligence — master and servant — general and special employer — when contractor furnishing trucks for all the business of a corporation and employing and paying chauffeurs as general employer liable for negligence of driver of truck which ran over and killed plaintiff's intestate.

An agreement between an incorporated milk company and defendant, engaged in the trucking business, " as contractor " provided that defendant should " do all the trucking work for the said corporation," " the trucking to be handled in such a manner as to cause no delay to the corporation," the defendant to furnish chauffeurs, gasolene and protection of goods in transit, his chauffeurs to do the loading, defendant to be liable for shortage of goods and breakage, his compensation to be a certain sum each day for each car.   Under this contract, a chauffeur driving a truck was the servant of the contractor doing his work and remained his servant while delivering milk in pursuance of its terms; and where one of defendant's trucks, through the alleged negligence of the driver, ran over and killed plaintiff's intestate, the defendant is liable.   The fact that the corporation was ·to furnish the necessary permits from the board of health does not alter the relation of the parties.   The fact that the chauffeurs were told to report tó the milk corporation and take orders from its foreman is immaterial and does not affect the result, since this was necessary as the corporation must have control of the times when and the places to which milk was to be delivered.

*Braxton* v. *Mendelson*, 194 App. Div. 898, reversed.

(Argued January 18, 1922;  decided March 7, 1922.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 7, 1921, unanimously affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

*George B. Class* and *John L. Class* for appellant.   The ·defendant Mendelson, engaged in the general trucking business, was, at the time of the accident, operating as

an independent contractor, under the express terms of his written contract with the Mutual McDermott Dairy Corporation, " to do all the trucking work " for said corporation, " to be liable for shortage of goods and breakage," " to maintain liability insurance," and is, therefore, liable under the doctrine of *respondeat superior* for the death of plaintiff's son, resultant upon the negligent driving of his (defendant's) auto truck by his servant, the chauffeur, whom he hired and paid. (*Hartell v. Simonson*, 218 N. Y. 345; *Kellogg v. Church Charity Foundation*, 203 N. Y. 191; *Baker v. Allen & Arnink Auto Renting Co.*, 231 N. Y. 8; *Matter of Schweitzer v. Thompson & Norris Co.*, 229 N. Y. 97; *McNamara v. Leipzig*, 227 N. Y. 291.) The learned trial justice erred in dismissing the complaint. The case was one for submission to the jury, under proper instructions from the court as to its construction of the written contract. (*Ferris v. Sterling*, 214 N. Y. 249.)

*William Dike Reed* and *William B. Shelton* for respondent. The chauffeur was the servant and under the control of the Mutual McDermott Milk Company at the time of the accident. (*McNamara v. Leipzig*, 227 N. Y. 291; *Braxton v. Mendelson*, 190 App. Div. 278; *Di Perri v. Motor Haulage Co.*, 185 App. Div. 384.)

ANDREWS, J. Benjamin S. Mendelson was engaged in the trucking business. The Mutual McDermott Milk Company delivered milk to customers in the city of New York. For this purpose it used his trucks. One of them, through the alleged negligence of the driver, ran over and killed the deceased. Was Mendelson liable for damages? The Trial Term held that he was not. The Appellate Division reached the same conclusion. We think both courts were mistaken.

The rule governing such cases is a simple one. Was the servant whose negligence injured a third party, per-

forming work for his master within the scope of his employment or was he loaned by his master to another to do the latter's business? In the one case the general employer is liable for his torts. In the other he is not. But while the rule is clear its application is often difficult. The true relationship between master and servant may be obscured by circumstances seemingly contradictory.

Ordinarily no one fact is decisive. The payment of wages; the right to hire or discharge; the right to direct the servant where to go, and what to do; the custody or ownership of the tools and appliances he may use in his work; the business in which the master is engaged or that of him said to be a special employer; none of these things give us an infallible test. At times any or all of them may be considered. The question remains: In whose business was the servant engaged at the time?

As here, the answer may depend on a written contract. In the absence of technical phrases whose meaning is obscure, or of latent ambiguities making the subject-matter of the contract doubtful, the court must construe it. (*Brady* v. *Cassidy*, 104 N. Y. 147.) Again there may be an express oral contract. This too the court should construe. Or the existence of an oral contract may be denied, or its terms disputed. If so it is for the jury to pass upon its existence and provisions and under proper instruction to give effect to it. (*Patten* v. *Pancoast*, 109 N. Y. 625.) Or the contract, oral or written, may be ambiguous. Its construction may depend upon the intent of the parties in turn dependent on disputed facts. Then it becomes the duty of the jury again under proper instructions to determine this intent. Or there may be no express contract. One is to be implied from contradictory or disputed circumstances. Once more the jury must decide what was the actual relationship.

In the case before us fortunately we are relieved of many of these difficulties by the existence of a written

contract, complete in itself containing no latent ambiguities, no words of technical import. Nor is it claimed that it was a mere blind intended to relieve either party of responsibility that otherwise would be theirs. In good faith it fixed their rights and their duties. It was between Mendelson " as contractor " and the corporation. Then as its primary purpose and object it provides that this contractor is to " do all the trucking work for the said corporation." This is the typical case of a general employer making a contract to do the work of another as an independent contractor. There is nothing in the contract which alters or qualifies the relationship so assumed. What follows simply fixes the way in which the work shall be done, and the compensation. The corporation is to assume no responsibility for breakdown or damage to the cars, damage that might easily happen through the negligence of helpers whom it is permitted to furnish. In case of accident the contractor is to furnish other trucks so that " the trucking is to be handled in such a manner as to cause no delay to the corporation." " Handled," clearly by the contractor. The contractor's chauffeurs are to do the loading, although at its option the corporation may furnish helpers and the contractor is liable for shortage of goods and breakage, whether caused by the negligence of his servants or otherwise. He is to furnish chauffeurs, gasolene and protection for the goods in transit. Also he is to maintain liability insurance but this clause does not apply to extra cars hired from him, thus making a distinction between the general work which he agrees to do and other cars hired by the corporation to perform its own business. Nor do we find anything inconsistent with our interpretation of the contract in the provision that the corporation is to furnish necessary permits from the board of health. The Sanitary Code provides that no milk shall be delivered without a permit issued by that board and the issuing of this permit depends upon the fact that the milk to be

delivered is unadulterated. Naturally, therefore, this permit would be obtained by the milk dealers whose milk was subject to inspection and who knew the quality of their product. Compensation is fixed at so much each day for each car.

Under this contract the servant of the contractor was doing his work and remained his servant, while delivering milk in pursuance of its terms. There is no indication that the parties gave to it a different construction or that in practical operation these terms were later modified by their action. The chauffeurs were told to report to the corporation and take their orders from its foreman. Obviously this was necessary. It must have control of the times when and the places to which milk was to be delivered. After telling them to report Mendelson gave no further orders to his drivers. The details of their work necessarily were fixed by the corporation. The cars were used only to deliver milk and were kept at night in the garage of the corporation. Some times Mendelson would not see his drivers for a week. All this is consistent with the contract. Service by night as well as by day was contemplated. It was a mere question of convenience. We, therefore, come back to the contract itself.

As it is not claimed that the jury should not have been called upon to pass upon the question of negligence and contributory negligence, the nonsuit should not have been granted. The judgment of the courts below should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN and CRANE, JJ., concur; HOGAN, J., absent.

Judgment reversed, etc.