MARSHALL O. DENSBY, Appellee, *vs.* FREDERICK H. BARTLETT, Appellant.

*Opinion filed October 28, 1925—Rehearing denied December 4, 1925.*

1. MASTER AND SERVANT—*right to discharge is essential to relation of master and servant.* The most universal and unfailing test in determining the relation of master and servant is where the control of the servant includes the power of discharge, and the relation does not exist unless it includes such right.

2. SAME—*general rule as to when servant becomes temporary servant of another master.* Where the servant of a general master is temporarily loaned or hired to another for some special service and becomes for the time wholly subject to the control of the person to whom he is loaned or hired and wholly freed from the control and direction of the general master he becomes for the time being the servant of the person to whom he is loaned or hired.

3. SAME—*when driver of automobile does not become servant of party hiring the car.* A party who hires, for the use of his customers in the real estate business, an automobile and driver from one who is engaged in the business of loaning cars and drivers for hire, does not become responsible for the negligence of the driver as his servant where he does not have the right to discharge the driver and does not hold himself out as owner of the car and master of the driver; and the fact that the hirer has the right to direct the driver when and where to go, whom to haul and the route of travel does not place the driver under the control of the hirer in the relation of master and servant.

4. APPEALS AND ERRORS—*when Supreme Court will not consider stipulation for entering judgment against one of two defendants* Where the disputed question in an action for negligence is which one of two defendants is responsible as master of the party causing the injury, and the trial court enters judgment against one defendant and for the other *non obstante veredicto,* on appeal of the defendant against whom the judgment is rendered the Supreme Court, holding the judgment should not have been against the appellant, will not consider a stipulation, not incorporated in the record, that in case of an appeal the reviewing court may direct judgment to be entered against either defendant.

APPEAL from the Third Division of the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LEE W. CARRIER, Judge, presiding.

COOKE, SULLIVAN & RICKS, and VAIL, ROE & PLAMONDON, (GEORGE A. COOKE, and EDWARD H. FIEDLER, of counsel,) for appellant.

ROY O. WEST, PERCY B. ECKHART, and VINCENT G. GALLAGHER, (WILLIAM L. BOURLAND, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellee, Marshall O. Densby, brought suit in the circuit court of Cook county against Frederick H. Bartlett and John T. Saracino for damages sustained as a result of the negligent operation of an automobile in which plaintiff was a passenger.

Bartlett was engaged in selling real estate in Chicago. He was engaged extensively in the business of purchasing outlying properties, subdividing them into blocks and lots and selling them. Saracino operated a garage and was engaged in the business of letting automobiles for hire and furnishing drivers for them. For the transportation of cus-

tomers and prospective customers to his subdivisions Bartlett provided automobiles, which he hired for that purpose from persons who were engaged in furnishing automobiles for hire. Bartlett also paid for transportation of prospective customers who visited his subdivisions by railroad train. On the day of the accident to plaintiff, Bartlett was engaged in selling a subdivision on the south side of the city known as "Greater Chicago," and for the purpose of carrying prospective purchasers to and from the subdivision had contracted with Saracino, a licensed liveryman, for the hire of automobiles operated by Saracino's chauffeurs, to haul the prospective customers. Plaintiff had previously purchased a lot in the subdivision but some misunderstanding had arisen about its location, and the day of the injury he, his wife and daughter went out to the subdivision on the Illinois Central railroad. Their tickets had coupons attached, which, if presented to Bartlett's office at the subdivision, entitled them to be furnished transportation by him to return. Plaintiff, his wife and daughter went to Bartlett's office to present their coupons and get return tickets. Plaintiff said he was obliged to be home by a certain time, and it appears there would be no train leaving early enough to enable him to get home at that time. One of Bartlett's agents suggested they take one of "our" cars used for the transportation of customers. Plaintiff consented to do so. The agent had a car drive up, and plaintiff and his wife and daughter got in and started for home. On the way the chauffeur drove one side of the car over a safety island, throwing plaintiff out and severely injuring him.

Pleas of the general issue and special pleas denying ownership, operation and control of the automobile were filed. There was a trial by jury and verdict for plaintiff against both defendants for $40,000. Plaintiff remitted $15,000. Both Bartlett and Saracino filed motions for a new trial, and Saracino also moved for judgment *non obstante vere-*

*dicto.* That motion was sustained and judgment rendered for him for costs. Bartlett's motion for a new trial was overruled and judgment rendered on the verdict against him for $25,000. He prosecuted an appeal to the Appellate Court for the First District, where the judgment was affirmed and a certificate of importance and an appeal granted to this court. Hereafter Bartlett will be referred to as appellant and Densby as appellee.

The important question presented and argued is whether, under the circumstances proved, appellant is liable. Whether appellee's injury was caused by the negligence of the driver of the car is not discussed in the briefs, and we will assume that is not a controverted question.

Appellant contends he was not the master of the driver of the car and is not liable for plaintiff's injuries. The Appellate Court held the relationship of master and servant existed between appellant and the driver of the car. If that was correct, then that relation did not exist between Saracino and the driver, and the judgment against appellant and in favor of Saracino would properly have been affirmed. The Appellate Court held that there is apparently some conflict or lack of uniformity in the decisions, but said the general proposition was deducible from the decisions that "the law recognizes that a servant in the general service of one, may be transferred, under contract or otherwise, to the service of another so as to become for the time the latter's servant, with all the legal consequences of that relationship." That proposition is supported by many decisions and we believe is disputed by none. The question presented for decision is a question of law. Appellant moved for a directed verdict at the close of plaintiff's evidence and again at the close of all the evidence.

There was no conflict in the testimony as to the material facts, and the only question on the merits to be considered by this court is whether there was any evidence tending to prove appellee's case against appellant.

The original declaration alleged defendants owned, operated and controlled the motor-driven vehicle; that it was driven by an employee of defendants, who so negligently drove it as to injure plaintiff. Some of the additional counts alleged Saracino was engaged in letting automobiles for hire; that Bartlett was engaged in selling real estate, and the two entered into an agreement whereby Saracino was to furnish cars and drivers to Bartlett when requested; that Bartlett was to hold himself out to prospective purchasers as owner and operator of the cars and was to have full control of them. There was no proof of any agreement between the two men except that Saracino was to furnish cars and drivers to Bartlett when requested, for which Bartlett was to pay Saracino an agreed sum per day or per hour for their use.

In *Schweitzer* v. *Thompson & Norris Co.* 229 N. Y. 97, 127 N. E. 904, the court said: "It is well settled that one may be in the general service of another, and nevertheless with respect to particular work may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation. [Citing cases.] Difficulty frequently arises in determining when this transfer of relationship takes place." The same court, discussing the subject in *Braxton* v. *Mendelson,* 233 N. Y. 122, 135 N. E. 198, said: "Was the servant whose negligence injured a third party, performing work for his master within the scope of his employment, or was he loaned by his master to another to do the latter's business? In the one case the general employer is liable for his torts; in the other he is not. But while the rule is clear its application is often difficult. The true relationship between master and servant may be obscured by circumstances seemingly contradictory."

In *Shepard* v. *Jacobs,* 204 Mass. 110, 90 N. E. 392, the owner of an automobile who hired it to another with a licensed chauffeur to drive it was sued for damages re-

sulting to plaintiff from the negligence of the driver while driving for the hirer and was held liable. The driver was subject to the hirer's orders as to when and where the car should be driven. In discussing the law the court expressed the opinion that there is a distinction between cases where there is a general letting of railroad trains, with a man or men to work with them, and carriage or driving cases. The court said: "In the application of these principles to the hiring of a carriage with horses and a driver, to be used for the conveyance of the hirer from place to place, it has been held almost universally that in the care and management of the horse and vehicle the driver does not become the servant of the hirer but remains subject to the control of his general employer, and that therefore the hirer is not liable for his negligence in driving. * * * If the defendants had furnished horses, a carriage and a driver under a similar contract, instead of an automobile and a driver, there would be no doubt of their liability for the negligence of the driver in the management of the team. The question is whether the same result should be reached upon the facts of this case. The analogy between the two kinds of contract is very close. The management of an automobile properly can be trusted only to a skilled expert. The law will not permit such a vehicle to be run in the streets except by a licensed chauffeur of approved competency. The danger of great loss of property by the owner, as well as of injury to the chauffeur, his servant, is such as to make it of the highest importance that care should be exercised in his interest and that the control and management of the machine should not be given up to the hirer. The reasons for applying this rule in a case like the present are fully as strong as when a carriage and horses are let with a driver. The decisions are conflicting in cases where there has been a general letting of railroad trains and large machines of different kinds, with a man or men to work with them... It

has often been held in such cases, where the hirer was to have the general control and use of them, that the men in charge became his servants, for whose negligence he alone was liable as master. [Citing cases.] But we are of opinion that there is a distinction between these cases and the so-called carriage or driving cases, and that the hiring of an automobile with a licensed chauffeur in the general service of an owner falls within the principle covering cases of the latter class."

We shall not occupy the time or space which would be required to cite, analyze and reconcile all the decisions referred to in the briefs. Whether appellant was liable depends upon whether he was the master and the driver of the car his servant. Perhaps the most universal and unfailing test in determining the relation of master and servant is where the control of the servant includes the power to discharge. Where that is so, the relation of master and servant exists. The court said in *Braxton* v. *Mendelson, supra,* the relationship of master and servant may be obscured by circumstances so that no one fact is decisive, and said, among other things to be considered is the business in which the general employer is engaged and that in which the special employer is engaged. There can be no question the driver of the car when appellee was injured was performing the service he was employed to perform by the general employer. Saracino was engaged in the business of performing special service for others, and while driving the car in the special service for appellant the driver was engaged in the business he was employed by Saracino to do. This court has stated the rule to be that the relation of master and servant does not exist unless it includes the right to discharge. (*Foster* v. *Wadsworth-Howland Co.* 168 Ill. 514; *Pioneer Fireproof Construction Co.* v. *Hansen,* 176 id. 100; *Harding* v. *St. Louis Nat. Stock Yards,* 242 id. 444; *Connolly* v. *People's Gas Light and Coke Co.* 260 id. 162.) The relation existing between appellant and the drivers of

cars furnished by Saracino did not include the right to discharge the drivers, as contended by appellee. Under the contract of hiring, appellant had power to direct the drivers when and where to go, whom to haul, and as he sometimes directed the routes to be taken it will be assumed he had that right also. Celander, a witness for appellee, testified he was transportation manager for appellant. He described how cars were hired and used in transporting appellant's customers and testified there was no agreement as to the character of cars to be furnished. Some "junky" cars were used, and there had been times when such cars were sent back, but that was very seldom, for a car had to be paid for if sent back. Such a thing happened not more than two or three times. The pay was for a car complete,—chauffeur and fuel. The contract with Saracino, proved by the evidence, did not confer the power upon appellant to discharge drivers. Saracino was engaged in the business of letting, for hire, automobiles fully equipped, with chauffeurs employed and paid by him to drive them. Cars and drivers were his. The hiring to appellant did not contemplate or authorize him to discharge the drivers and engage others to drive the cars. As said in *Shepard* v. *Jacobs, supra,* an automobile used for hire can be driven only by skilled persons licensed to drive it. Saracino employed such skilled men as he was willing to trust to drive and manage his cars, and he never conferred upon or surrendered that authority to appellant. It is true, if the cars sent appellant were not suitable, in his judgment, for his purpose, he could, and a few times did, refuse to use them and send both car and driver back to the person who furnished them. That he did that is no evidence whatever that he had the right to discharge the driver, who had been hired and furnished to appellant by the owner of the car. If the relation of master and servant existed between appellant and the driver of the car it did not exist by reason of the fact that appellant had the power to discharge him.

Questions similar to the one here involved have heretofore been construed by this court. In *Foster* v. *Wadsworth-Howland Co. supra,* one Smiddie had been hired by the defendant company to furnish a wagon and driver and haul goods for defendant. Defendant's name was on the wagon. Due to the negligence of the driver plaintiff's intestate was killed. The suit was brought against the company which hired the wagon and driver from Smiddie. The trial court directed a verdict for defendant, and the judgment was affirmed by the Appellate Court and this court. Discussing the question whether the court erred in directing a verdict for defendant this court said: "The principal question necessary to be considered in this case to determine whether or not this instruction was erroneously given by the court, is whether the driver of the wagon which caused the death of appellant's intestate was a servant of appellee. The wagon bore the name of the appellee company. In *Pittsburg, Ft. Wayne and Chicago Railway Co.* v. *Callaghan,* 157 Ill. 406, where a party was injured by an engine which was lettered with the name of the plaintiff in error, this court held that was *prima facie* evidence of possession by that company. *Prima facie* evidence may be overcome or rebutted by proof of opposite facts, and in the case at bar it appeared from the evidence that the driver of this wagon was in the employ of one Smiddie, who owned two teams and wagons and who contracted with appellee to do its hauling for a specified sum per week. The driver of the wagon which caused the injury was not an employee of appellee nor subject to its orders but was under the control and in the employ of Smiddie. Smiddie contracted to do the hauling, which contract necessarily carried with it the duty to employ such assistants as might be required." The court in that case cited with approval and quoted from *Wood* v. *Cobb,* 13 Allen, (Mass.) 58, and concluded: "In this case appellee exercised no control over the driver of this wagon; it did not employ him; it did not pay him; it had no right

to discharge him; nor had it the right to direct how or in what manner his work should be done, further than it should conform with its agreement made with Smiddie. Under the circumstances the driver of the wagon was not the servant of appellee, and, consequently, there could be no liability against it." That case was cited and quoted from with approval in *Harding* v. *St. Louis Nat. Stock Yards, supra. Bristol & Gale Co.* v. *Industrial Com.* 292 Ill. 16.

*Connolly* v. *People's Gas Light and Coke Co. supra,* was a suit originally brought against the gas company and Leo Smith but dismissed as to Smith. There was no material dispute as to the facts. The gas company had hired one Hartwell to do its teaming and hauling for five years, under a contract fixing prices to be paid. The contract provided the teaming should be satisfactory to the gas company, done according to its direction, and the employees of Hartwell were to be at all times satisfactory to the gas company. Smith was one of Hartwell's drivers. The suit was brought to recover damages for an injury to plaintiff, alleged to have resulted from the negligence of Smith, the driver. The negligence charged by the plaintiff was that Smith negligently caused a piece of gas pipe to fall into an excavation where plaintiff was at work and injure him. There was a judgment for plaintiff, which the Appellate Court affirmed. This court, in reversing the judgment, said: "It is true that a person who is in the general employment of one person may with his consent be transferred to another for some particular work, in such a way as to become the servant, for the time being, of the other in doing that work, but a servant who is sent to do work which his master has agreed to perform does not become the servant of the one for whom the work is performed by having the work pointed out to him. He is the master who has the choice, control and direction of the servant, and it was held in *Pioneer Fireproof Construction Co.* v. *Hansen,* 176 Ill. 100, that the right to control involves the power to discharge, and that the relation

318—40

of master and servant will not exist unless the power to discharge exists. In *Harding* v. *St. Louis Stock Yards,* 242 Ill. 444, the statement that the relation of master and servant does not exist unless the power to discharge exists was repeated, and the court approved the decision in *Driscoll* v. *Towle,* 181 Mass. 416, where the conditions were practically the same as in this case, and where the driver had been hauling property for an electric lighting company and sometimes gave help outside of driving his wagon. There was no possible ground upon which Smith could be said to be the servant of the defendant in going to his horse to adjust the fly-net and prevent some damage to his employer's property. Smith sometimes voluntarily helped the gas-fitters in doing their work, if he saw fit to do so; but he was under no obligation to do it, and he was not assisting Dawson at the time of the accident in any way, even if the work that Dawson was doing had contributed to the accident, which was not the fact. The provision of the contract with Hartwell that the driver should be satisfactory to the defendant and the teaming be done in accordance with the direction of the defendant's superintendents, was nothing more than the usual agreement that work or services shall be satisfactory to the person for whom the work is done or the services performed, and it did not make Hartwell's drivers the servants of defendant."

In *Harding* v. *St. Louis Nat. Stock Yards, supra,* the suit was against the stock yards for damages for an injury caused by the negligence of a railroad switching crew. The defendant was engaged in the railroad switching business, and furnished for hire to a packing company which maintained rails, tracks, yards and switches on the grounds of its plant, cars and a crew of switchmen. Defendant was paid by the packing company so much per car. The switchmen were hired and paid by defendant. A judgment for plaintiff against the stock yards was affirmed by the Appellate Court and this court. The principal defense was, that

while the switching crew were in defendant's general employ, at the time of the injury to plaintiff they were the special servants of the packing company.  This court said there is no absolute or arbitrary rule by which to determine in every case whether a person is the servant of the general or of a special master, as those terms are used in decisions. The court quoted from *Driscoll* v. *Towle,* 181 Mass. 416, 63 N. E. 922, as a correct statement of the law : "In cases like the present there is a general concensus of authority that although a driver may be ordered by those who have dealt with his master to go to this place or that, to take this or that burden, to hurry or to take his time, nevertheless, in respect to the manner of his driving and the control of his horse, he remains subject to no orders but those of the man who pays him.  Therefore he can make no one else liable if he negligently runs a person down in the street." In the *Driscoll case* the defendant was engaged in the general teaming business and employed drivers of the teams. Under an agreement between him and an electric light company he did hauling for the company, furnishing the wagon and driver.  The light company gave the driver directions where to go and whether to drive fast or take his time.  At night the wagon and teams were returned by the driver to defendant's stables.  The trial court directed a verdict for the defendant and the Supreme Court of Massachusetts reversed the judgment.  Some of many other cases laying down the same rule under similar circumstances are *McNamara* v. *Leipzig,* 227 N. Y. 291, 125 N. E. 244; *Charles* v. *Barrett,* 233 N. Y. 127, 135 N. E. 199; *Morris* v. *Trudo,* 83 Vt. 44; *Garretson* v. *Rambler Garage Co.* 149 Wis. 528, 40 L. R. A. (n. s.) 457; *Hannon* v. *VanDycke Co.* 154 Wis. 454; *Thatcher* v. *Pierce,* 281 Pa. 16; *Joslin* v. *Grand Rapids Ice Co.* 50 Mich. 516, 45 Am. Rep. 54; *Stewart* v. *California Improvement Co.* 131 Cal. 125; *Ash* v. *Century Lumber Co.* 153 Iowa, 523; *Meyers* v. *Tri-State Automobile Co.* 121 Minn. 68, 44 L. R. A. (n. s.) 113; *Forbes* v.

*Reinman,* 112 Ark. 417, 51 L. R. A. (n. s.) 1164; *Consolidated Plate Glass Co.* v. *Caston,* 29 Can. Sup. Ct. 624; *Little* v. *Hackett,* 116 U. S. 366; *Braxton* v. *Mendelson, supra.*

The proof did not bring this case within the rule stated by the Appellate Court and upon which its decision was based. Where the servant of the general master is temporarily loaned or hired to another for some special service and becomes for the time wholly subject to the control of the person to whom he is loaned or hired and wholly freed from the control and direction of the general master, he becomes the servant, for the time being, of the person to whom he is loaned or hired and during such time becomes the servant of the latter. (*Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Bovard,* 223 Ill. 176.) The proof does not show Saracino surrendered the manner in which the car should be driven wholly to the control and direction of appellant. The driver, while performing a special service for appellant, was performing work of his employer, Saracino, within the scope of his employment, viz., driving cars for persons who hired them from his employer. Many of the cases above cited expressly hold that the right of the hirer to direct the driver when and where to go, whom to haul and the route to travel does not place the driver under the control of the hirer as to the manner of driving the car. In that regard he is doing the work of the general employer and is not subject to the control of the hirer. In this case appellant was not authorized to discharge a reckless driver and replace him with another driver. At most he could dismiss the car and driver. In the absence of an agreement to do so, it cannot be inferred that the owner of cars of considerable value and requiring competent and skilled persons to drive them, and who employed as drivers men he was willing to trust, would authorize one to whom he hired them to discharge the drivers for any reason.

We shall not take the time to refer to or analyze the many cases cited by appellee. Some of them are distinguish-

able on the facts, and none of them are conclusive against the rule announced in the cases we have cited and many to the same effect to which we have not referred. In obedience to the overwhelming weight of authority, not only of other jurisdictions but also of this State, we must hold that under the facts proved the driver of the car was the servant of the general employer, Saracino, who hired and paid him, and who, alone, under the proof, was responsible for his negligence in driving the car. There are cases holding if the hirer directs the driver to drive in a certain manner, and in obeying the directions of the hirer in that regard an injury to someone is caused, the hirer is liable, not as master of the driver but because it was his wrongful orders that caused the injury. Those cases can have no application to this case. Questions of bailment and agency are not relevant to a determination of the question here presented.

Appellee also contends appellant is estopped by the state of the pleadings and by his conduct to deny he was operating the car and that the driver was his servant. Appellant by pleas denied he owned, possessed, operated, directed, managed or controlled the automobile, and that he did not hold himself out to customers as the owner and operator. Appellant admitted nothing by his pleas and was not estopped to deny that the driver was his servant. He was not estopped by his conduct from making that denial. In addition to what we have already stated to be the plan of using the machines, servants of appellant referred to the cars as the Bartlett Company's machines, or "our cars," proposed to appellee to send him and his family home in an automobile, and called "one of the boys" to take them in a car. The proof does not show that appellant held himself out as owner of the car and master of its driver. *Chicago Railway Co.* v. *Volk,* 45 Ill. 175.

In so far as the instructions were contrary to the views we have expressed they were erroneous.

Appellee asks if this court holds Saracino alone was liable to appellee, that under a stipulation signed by the attorneys for Saracino, appellee and appellant, judgment be entered here against him, or that the cause be remanded to the circuit court with direction to that court to render judgment against him. The stipulation is not in the record or in the abstract. It is set out in appellee's brief and is as follows: "It is hereby stipulated and agreed by and between the parties to the above entitled cause, by and through their respective attorneys, that upon appeal of said cause to the Appellate Court for any district of Illinois, or upon the prosecution of a writ of error to the circuit court of Cook county in said Appellate Court, and upon appeal or petition for *certiorari* to the Supreme Court of Illinois by the plaintiff or the defendants, Frederick H. Bartlett or John T. Saracino, the parties hereto consent that said Appellate Court or Supreme Court, as the case may be, in reviewing said cause as to the defendant John T. Saracino, may consider the whole record in said cause, including the bill of exceptions, and enter such order or judgment as such reviewing court shall deem proper, including any order or judgment that in the opinion of said reviewing court the trial court should have made or entered in said suit, from such consideration of the entire record, including the bill of exceptions."

We do not doubt the genuineness of the stipulation, but we are not authorized to consider it. At the June term of this court Densby filed a copy of the stipulation, and a motion that if this court concluded Saracino should be also a party to the judgment for plaintiff, this court make him such party or direct the circuit court to do so, or if this court concluded Saracino alone was liable, judgment be entered here against him or that the circuit court be directed to enter such judgment. Notice of the motion was served on the attorneys for Saracino and Bartlett. The motion was denied by this court, and the stipulation is not before us for consideration. The stipulation is not in the record or

abstract, is not referred to in the briefs of appellant, and only briefly in appellee's brief.

An additional reason why we cannot consider the stipulation is, that the plaintiff (Densby) sued out of the Appellate Court a writ of error to review the action of the trial court in rendering judgment for defendant Saracino. That court affirmed the judgment, and plaintiff filed in this court a petition for writ of *certiorari*. As the judgment in the trial court was against plaintiff for costs, only, this court had no jurisdiction to entertain the petition, and for that reason the writ was denied, and the judgment of the Appellate Court was final.

The judgments of the circuit and Appellate Courts against appellant are reversed.   *Judgments reversed.*