JAMES STEELE, Plaintiff, *v.* C. G. MEAKER Co., INC., and Another, Defendants.

Supreme Court, Cayuga County, February 2, 1928.

**Master and servant — liability of master for acts of servant — relation of master and servant exists between grocery company and delivery service where latter was organized solely for delivery of goods of company — motor vehicles — injury to pedestrian crossing street — question of negligence or contributory negligence is for jury.**

The relation of master and servant exists between a grocery company and an auto delivery company, creating liability for the negligence of the driver of one of the latter's trucks, where the delivery company was organized solely for the purpose of delivering the goods of the grocery company, delivered for no one else, had the same office and an identity of officers, the driver reporting to branch stores and receiving orders for delivery from managers of the grocery company and being paid bonuses by the grocery company.

The question of negligence and contributory negligence was one of fact for the jury where the plaintiff, in attempting to cross a street, stepped between two parked cars, looked to the right and left and saw a car approaching from the right and defendants' truck coming from the left, about one hundred and seventy-five feet away, advanced a foot or two and then backed up to the parked car where he was struck by the truck.

Supreme Court, February, 1928.          [Vol. 131

MOTION by defendants for a new trial on judge's minutes.

*Dixson, Searl, Jeffery & Cole,* for the plaintiff.

*Leary & Leary,* for the defendants.

RODENBECK, J. Where it is sought to charge one with the tort of another, the test is the existence of a relationship creating the responsibility. The relation of master and servant creates such a responsibility, where the servant is engaged in the master's business and is acting within the scope of his employment. The difficulty is to determine in each case, under its peculiar circumstances, whether or not the relationship exists. This question may be one of fact or of law. There may be a difference of opinion as to the facts and each case is a rule unto itself. The cases may furnish illustrations of the application of the rule but no case is decisive of any other case unless the facts are similar. The problem is to discover whether or not a legal relationship exists, which will create a responsibility. The rule of liability, in case of such a relationship, is one of expediency and is designed to protect the public against a shifting of personal responsibility by the employment of another. The person actually participating in the tort is always responsible but this responsibility may not be sufficient to protect the public and so, in certain cases, the person employing him has also been made responsible. But the combination of circumstances may be such that it may be difficult to determine the question of employment. Many cases have been passed on where this responsibility was involved, some of which do not seem entirely consistent or reasonable, but all of which are attempts to apply the general rule to particular facts. Stress has been laid upon various tests in determining the existence of the relationship, but no single one is conclusive. It has been stated that the business in which the person committing the tort is engaged is the real test (*Braxton* v. *Mendelson,* 233 N. Y. 122, 124), but " business " is an ambiguous term in this connection, and it has been said that there will be no inference of a new relation where the " employee is furthering the business of his general employer by the service rendered to another " unless " command " has been surrendered. (*Charles* v. *Barrett,* 233 N. Y. 127, 129.) But these terms are not sufficiently clear as a final test. The real question is, taking all the circumstances into account, whether or not the service or work a person is doing and the control exercised over him creates the relationship of master and servant. The application of this rule requires a determination from all the facts and circumstances. " The answer depends upon whose servant he was at the time " (*Wagner* v. *Motor Truck Renting Corp.,* 234 N. Y. 31); which is

saying that the relationship of master and servant

In the case at bar such a relationship exists from the nature of the employment and attending facts. The Auburn Delivery Company was organized to do the business of the C. G. Meaker Company and did work for no one else. It was the means employed by the C. G. Meaker Company to do a part of its work, consisting of the delivery of its goods. Its business connections with the C. G. Meaker Company were such as to fairly establish the legal relationship of master and servant between it and the C. G. Meaker Company and thus create a liability for the acts of its subordinate in driving the truck involved in this accident. This is an equitable conclusion protecting the public from the negligent acts of the driver engaged in the " service " and " business " of the C. G. Meaker Company, the driver being hired by the Delivery Company and having little financial responsibility. The company whose work the driver was doing should be responsible under these circumstances for his acts, being employed by the Auburn Auto Delivery Company which was organized as a means of carrying on the business of the C. G. Meaker Company. This is not a case of an independent legal corporate entity acting as a common carrier transporting goods for the C. G. Meaker Company or even one doing work only for that company, but an agency of the company so related to it and so intertwined with it as to constitute it a servant in the conduct of its business. Calling a servant by another name does not alter his character.

The question of negligence and contributory negligence could not be determined as a matter of law but was a question of fact for the jury. The plaintiff, according to his evidence, walked between two parked cars to cross the street. As he emerged about a foot he looked to the right and saw a car approaching and to the left and saw the defendants' truck coming. He walked to the south along one of the parked cars and was about a foot away when he saw the defendants' truck about twenty or twenty-five feet away and then backed up to the parked car as close as he could in which position he was struck by the truck, the driver explaining, " I tried to turn but the Ford sedan was in my way." The plaintiff had a right to proceed as he did, was not obliged to refrain from crossing the street and was only held to reasonable care. Under the facts this was a question for the jury. The law does not say just how he shall proceed except that he shall look. It does not say " precisely how far, or when or from where. * * * The law does not even say that because he sees a wagon approaching, he must stop till it has passed. He may go forward unless it is close upon him; and whether

he is negligent in going forward, will be a question for the jury. If he has used his eyes, and has miscalculated the danger, he may still be free from fault." (*Knapp* v. *Barrett*, 216 N. Y. 226, 230.) It is not a question whether with greater care he might have avoided the accident, but whether he failed " to observe the rules of conduct which are dictated by common experience and common sense." (*Carr* v. *Pennsylvania R. R. Co.*, 225 N. Y. 44, 46; *Chamberlain* v. *Lehigh Valley R. R. Co.*, 238 id. 233.) This is not a case of proceeding or backing in front of a street car, having a dominant right of way, or of placing himself in a position of danger (*Neuman* v. *Union R. Co.*, 243 N. Y. 249), but of seeking to avoid a truck which was negligently run into him.

Motion denied, with ten dollars costs to abide event.

So ordered.