## LABBEE v. TRAVENOT S. S. CO., Inc.

Circuit Court of Appeals, Second Circuit.
January 6, 1930.

No. 134.

C. Bertrand Race, of Albany, N. Y. (Clarence E. Mellen, of New York City, of counsel), for plaintiff-appellee.

A. G. Senior, of Utica, N. Y., and Haight, Smith, Griffin & Deming, of New York City (E. R. Kraetzer, of New York City, of counsel), for defendant-appellant.

Before L. HAND, SWAN, and MACK, Circuit Judges.

MACK, Circuit Judge. Plaintiff, a longshoreman, in the employ of a paper company, working at the unloading of freight from a vessel, was severely injured through the negligence of a winchman in operating a winch on the vessel. The only question raised on this appeal from the judgment for plaintiff entered on a verdict is whether or not this defendant is responsible for the consequences of the winchman's negligence.

There is no conflict as to the facts that present this legal question. Under its charter party with paper company, defendant, described therein as "chartered owners" of a named vessel and "others," was to supply vessels for carriage of baled wood pulp from Nova Scotia to Albany; "cargo to be loaded, stowed and discharged by charterers free of risk and expense to the steamer. Steamer to furnish steam winches and winchmen." For the trip herein involved, defendant supplied a vessel which it had itself chartered. Under this charter party, charterers undertook "to load, stow, trim and discharge the cargo at their own expenses, vessel providing winchmen."

The vessel furnished had, however, an insufficient number of winchmen for the unloading; the paper company therefore hired several, including the one whose negligence caused the injuries. A witness testified that, some time prior to the arrival, defendant's vice president had stated to a representative of the paper company "that, if the steamship upon arrival was not fully equipped to handle the boat with full despatch, as a result of shortage of winchmen, we should secure them and bill defendant for the amount of wages." This uncontradicted testimony was expressly conceded to be true. These winchmen were paid by the paper company in accordance with the usual practice and without objection by defendant; the wages so paid were deducted by defendant from its freight bill.

(1) On this evidence, in part documentary, in part concededly true, the court and not the jury should have decided whether or not the relation between defendant and the negligent winchman was such that defendant could under any circumstances be liable for the results of the winchman's negligence. Braxton v. Mendelson, 233 N. Y. 122, 135 N. E. 198.

Plaintiff properly concedes that defendant the chartering intermediary between the paper company and the shipowner, would not have been liable if the latter, pursuant to his obligation under the charter to defendant, had supplied the requisite number of winchmen. Thereby he properly concedes that defendant's charter party obligation to the paper company to furnish winchmen was in no sense personal but one that could be met through an independent contractor. He contends, however, that, while the shipowner might thus have been an independent contractor, the paper company itself could not and did not act as such in unloading its own goods. He contends further that the paper company did not engage the winchmen to be its employees or to do its work, but that, in hiring and paying them, it acted solely as defendant's agent pursuant to the verbal authorization.

Clearly defendant was under a contractual obligation to the paper company to have winchmen on hand. It could not and did not absolve itself therefrom by securing a similar promise from the shipowner. But performance of the specific obligation was waived by the paper company when pursuant to the authorization it engaged the winchmen; for the original obligation there was substituted defendant's obligation to repay advances for wages.

As plaintiff asserts, no privity of contract arose between the paper company and

the shipowner; there was privity of contract only between the paper company and defendant as to the one charter party, and between defendant and shipowner as to the other. We are, however, not concerned here with the contractual rights and duties of these parties or with privity of contract; the question before us is solely that of the relation, if any, between the winchman and defendant, and the latter's resulting responsibility, if any, for the winchman's tort. So far as the winchman himself was concerned, he knew only the paper company as employer. It hired him; it paid him; and, subject to the right of the ship captain to control those engaged on the vessel, it alone directed and could have discharged him. As against these rights and obligations, the ultimate contractual liability of defendant to paper company for reimbursement of wages, whether as damages for breach of contract or as fulfillment of the verbal agreement, would seem to be of no importance in determining whether he was in the paper company's or defendant's general employment. But, as was held in Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480, the responsibility for the winchman's negligence depends, not upon whose employee he was generally, but upon whose servant he was when he was guilty of negligence. As there stated, the inquiry is "whose is the work being performed. * * * A question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work." Cf. The Santona (D. C.) 152 F. 516.

We are not called upon in this case to determine whether, as between the paper company that actually supplied the men, including this winchman, to perform its duty of unloading, and the shipowner who furnished some of the winchmen and who through the captain remained in general control of the ship and those working thereon, this winchman was doing the work of the former or of the latter. It suffices, to absolve this defendant from liability, that, regardless of its obligation to have the necessary winchmen supplied and its authorization to the paper company to replace, at defendant's expense, any men not so furnished, defendant had nothing whatsoever to do with the actual work of unloading; it could not and it did not exercise any direction or control over any of the workmen. It follows, therefore, that, irrespective of whether the negligent winchman could for any purpose be deemed to be in the general employ of defendant, manifestly at that time and on that occasion, he was not doing any work that defendant had bound itself personally and through its own employees to do or that defendant was in fact directing or controlling. In other words, he was not pro hac vice defendant's servant, but either the shipowner's or the paper company's. Defendant's motion at the end of the trial for a dismissal of the complaint should have been granted.

Reversed and remanded.