Charles Lambiase, J.
Claimant has filed this claim to recover for personal injuries sustained by him by reason of the alleged negligence on the part of New York State Thruway Authority, hereinafter called “ Thruway Authority ”, in the construction and in the maintenance of a portion of the public toll highway known as New York State Thruway located about two miles west of the point thereon known as Route 96 or Victor, New York Interchange, and because of the alleged negligence of an agent and/or employee of the Thruway Authority in operating on said Thruway an automibile, owned by it, and within the scope of his employment, in which automobile on January 11, 1956 claimant was lawfully riding as a passenger.
It is the position of claimant that at all times in the claim mentioned he was not an employee of the Thruway Authority, and that he was an independent contractor.
The Thruway Authority contends that at all times in the claim set forth, claimant was its employee, and that this claim must be dismissed for, as such, his sole and exclusive remedy is under section 11 of the Workmen’s Compensation Law of the State of New York,— it being uncontradicted that the Thruway Authority had complied with all the provisions of said Workmen’s Compensation Law with respect to its employees. Further, it maintains that no actionable negligence ag*ainst the Thruway Authority has been established, and that claimant is guilty of negligence proximately causing or contributing proximately to the happening of the accident resulting in his injuries.
Concededly, if at the time in question claimant was an employee of the Thruway Authority, the remedy provided by section 11 aforesaid would be exclusive, and the claim would have to be dismissed. It would seem, therefore, that we should consider first the question as to the relationship of claimant to the Thruway Authority on January 11, 1956. We pass to its consideration.
*205 On January 11, 1956 claimant was, and since July 1, 1947 had been, an employee of the Department of Public Works of the State of New York and more particularly of the Bureau of Soil Mechanics thereof. His title and work was that of Senior Engineering Geologist. Some time prior to that date and on November 28,1955 the Thruway Authority, through its Chief Engineer, one C. H. Lang, had written a letter to one Eugene F. Gibbons, Chief Engineer of the New York State Department of Public Works, a copy of which letter is as follows:
‘ ‘ At Twenty of our restaurant and gas station sites the water supply is obtained from wells. These wells were drilled under various contracts prepared and supervised under direction of Mr. McAlpin, Director of the Bureau of Soil Mechanics of the Department of Public Works.
“ Several of these restaurants using wells as a source of water supply are now completed and open to the public. We have determined that for various reasons it will be highly desirable to have a second or standby water supply available in the form of a second producing well.
“ Because Mr. McAlpin and certain members of his staff are completely familiar with the well drilling that has already been performed at the various sites, it appears that they would be the logical choice to layout and supervise the drilling of additional wells. It is realized that because of your own workload the complete engineering on these wells by the Bureau of Soil Mechanics may not be possible. However, a few conferences and one or two field trips with Mr. McAlpin or Mr. Bird would be invaluable to us and would enable us to progress an additional well program in an economical and efficient manner.
“It will be appreciate if you will review this matter and advise me as to whether and to what extent the forces of the Bureau of Soil Mechanics will be available for this work. A favorable reply will be very helpful.” (State’s Exhibit “ B ”.)
On December 21,1955 said Gibbons wrote the following reply:
“ Referring to your November 28th letter requesting assistance from our Bureau of Soil Mechanics in progressing water supply wells for your facilities, I am only too glad to have that Bureau assist in the planning and preliminary engineering involved in the preparation of contracts for that work and through consultations and discussions assist with the interpretation of subsurface water supply conditions as the contracts are advised.
" However, due to a shortage of required personnel, our Bureau of Soil Mechanics cannot assist with the inspection of the well contracts.” (State’s Exhibit “ 0 ”.)
*206 Claimant’s supervisor assigned Mm to assist in the project outlined in said letters. It was for that reason that early in the morning of January 11,1956 claimant was riding, as a passenger, in an automobile owned by the Thruway Authority and driven by an employee thereof, which automobile was being driven westerly along the Thruway. Stops were made along the Thruway at various points previously designated by the Thruway Authority and pointed out to claimant by the driver of the automobile where claimant proceeded to do what was necessary to be done in connection with his assignment.
Claimant and the driver of the automobile thus continued westerly until about 12:30 p.m. when they arrived at a point about two miles west of Route 96 or the Victor, New York Interchange and more particularly within approximately 100 feet of mile post 352. At this point a deer came bounding down first in a southerly direction towards the Thruway and then in a general southeasterly direction from the top of a .bank located on the north side of the Thruway. It came in contact with the right corner of the wrap-around windshield of the automobile. Its body was cut in two, the hind quarters falling outside of the veMcle. The remainder thereof came through the windshield, struck claimant in and about the face and eyes, and caused Mm to be thrown about the interior of the car. It then fell onto the rear seat of the automobile. The hind quarters were found on the highway a little less than 400 feet to the east of the rear end of the automobile as it stood stopped on the highway.
Claimant sustained severe bodily injuries including, among other injuries, the loss of the sight of his right eye, bruises, contusions and lacerations in and about the head and jaw, and a hair line fracture of the nose.
The claim has been duly filed, has not been assigned, and has not been submitted to any other officer or tribunal for audit or determination.
The Thruway Authority was created as a separate body corporate and politic constituting a public corporation with authority to sue and to be sued. (Public Authorities Law, §§ 352-354.) Provisions for the administration and outlining the purposes, powers, and obligations of the Thruway Authority are made in sections 350 through 373 of the Public Authorities Law.
We entertain no doubt that the Thruway Authority is a separate entity for the purposes of suit. (Pantess v. Saratoga Springs Auth., 255 App. Div. 426; see, also, Malone v. State of New York, 285 App. Div. 1218, affd. 1 N Y 2d 837; Matter of Plumbing Assn. v. Thruway Auth., 4 A D 2d 541, motion for *207 leave to appeal granted 4 N Y 2d 676 [April 3, 1958]; see, also, Strang v. State of New York, 206 Misc. 734.) We do not think that Easley v. New York State Thruway Auth. (1N Y 2d 374) is decisive here. It went no further than upholding the constitutionality of a jurisdictional statute passed by the Legislature. It did not abolish the separate entity of a public corporation.
“ The true relationship between master and servant may be obscured by circumstances seemingly contradictory. Ordinarily no one fact is decisive. The payment of wages; the right to hire or discharge; the right to direct the servant where to go, and what to do; the custody or ownership of the tools and appliances he may use in his work; the business in which the master is engaged or that of him said to be a special employer; none of these things give us an infallible test. At times any or all of them may be considered. The question remains: In whose business was the servant engaged at the time?” (Braxton v. Mendels, 233 N. Y. 122, 124.) “A servant may, with his consent, through the agreement of his master, become for the occasion and time and to the extent agreed upon the servant of another.” (McNamara v. Leipzig, 227 N. Y. 291, 294-295.)
“ The fact that a workman has a general and a special employer is not inconsistent with the relation of employer and employee between both of them and himself.” (Matter of De Noyer v. Cavanaugh, 221 N. Y. 273, 275; Matter of Dennison v. Peckham Road Corp., 295 N. Y. 457; Matter of Cook v. Buffalo Gen. Hosp., 308 N. Y. 480, 484.) “ One of the essentials to be considered in determining the question whether the general employment of one doing work primarily beneficial to another continues, is the agreement or understanding between the general employer and the person primarily benefited. (Braxton v. Mendelson, 233 N. Y. 122.) ” (Delisa v. Schmidt, Inc., 285 N. Y. 314, 319.)
Was there an agreement or understanding between the Department of Public Works of the State of New York and the Thruway Authority which sanctioned the arrangement made as to claimant? If so, what was it; and if not so, what governed the dealings between them. In this instance there was more than an agreement or understanding between the Department of Public Works of the State of New York and the Thruway Authority. Claimant’s services to the Thruway Authority were rendered because such services were required by statute of his department which had assigned him to the work. It was a legal obligation which his department and he, as an employee thereof, had assumed pursuant to section 362 of the Public Authorities Law which, at all times herein mentioned, in pertinent part read as *208 follows: At the request of the authority, engineering and legal services for such authority shall be performed by forces or officers of the department of public works and the department of law respectively, and all other state officers departments, boards, divisions and commissions shall render services within their respective functions.”
The arrangement was recognized practice and, pursuant to the same sanction, during the period 1953 to 1955 claimant had been assigned to the work or supervision of locating and drilling wells used as primary sources of water supply by 20 to 25 Thruway restaurants and 5 or 6 maintenance stations, during the course of which he performed a reconnaissance survey of said proposed sites and submitted reports. On that occasion also he had been assigned to perform said duties by the Director of Bureau of Soil Mechanics. We are not told the financial details of the arrangement, that is, which of the two entities eventually paid for claimant’s services.
The section says “ engineering and legal services for such authority shall be performed ”, It does not say under whose direction said services shall be performed. Construing the evidence according to the standard established by the cases, it appears that reasonable men might differ as to where lay the power to control claimant at the precise time of the accident, and, therefore, the question is one of fact.
In the light of the foregoing, we have concluded that claimant at the time of the accident had a general employer, viz., the Department of Public Works of the State of New York, and that at the same time he had a special employer, viz., the Thruway Authority. We must and do, therefore, hold that he was not an independent contractor at the time of the accident. He may not, therefore, maintain this claim.
We do not deem it essential to our decision to discuss any of the other issues before the court, including that of damages. We have notwithstanding marked all of the proposed findings of fact and conclusions of law submitted by the parties herein, which, of course, involve such other issues in order to comply with approved practice as is in such cases made, and provided. (Goetting v. Biehler, 33 Hun 500; Civ. Prac. Act, § 439; L. 1936, ch. 915; Zaborowski v. Zaborowski, 256 App. Div. 1032; De Riso Bros. v. State of New York, 161 Misc. 934; Jobbers Credit Assn. v. State of New York, 162 Misc. 301.)
We conclude that the claim must be dismissed. The claim, therefore, is dismissed upon the merits.
The foregoing constitutes our written and signed decision upon which judgment may be entered. (Civ. Prac. Act, § 440.)
Let judgment be entered accordingly.