PITTSBURG, CINCINNATI, CHICAGO AND ST. LOUIS RY. CO.

*v.*

MOLLIE BOVARD, Admx.

*Opinion filed October 23, 1906.*

1. RAILROADS—*what tends to show negligence in operating train.*
Proof·that the defendant's servants, while switching, "kicked" a
caboose down an inclined track without having anyone in charge to
control its movements or give warning of its approach, tends to
show negligence.

2. SAME—*when switch tender is not a fellow-servant of engine
crew.* A switch tender is not a fellow-servant of the crew of an
engine switching in the yards where such crew is in the employ of
a different company, which uses the yards of the switch tender's
employer without being under the direction or control of the latter
further than to obey its yard-master's general orders as to what
tracks to use, there being nothing to show the switch tender was
loaned to the defendant or that he was co-operating with defend-
ant's crew at the time of his injury.

3. SPECIAL INTERROGATORIES—*when appellant is not bound by
answer to special interrogatory.* Whether or not employees are fel-
low-servants is a mixed question of law and fact, and the fact that
the jury answered in the negative the defendant's special interroga-
tory as to whether plaintiff's intestate and defendant's servants
were fellow-servants does not preclude the defendant from raising
the question of fellow-servants on appeal, where it saved the ques-
tion as one of law by requesting a peremptory instruction to direct
a verdict in its favor.

4. INSTRUCTIONS—*when instruction does not assume fact.* An
instruction holding that in order to constitute defendant's servants
fellow-servants with the deceased, "so as to exempt the defendant
from liability on account of the death of deceased from the negligent
acts of defendant's said servants, (provided you believe, from the
evidence, deceased's death was caused by the negligent act of said
servants,") etc., does not assume that the death of the deceased re-
sulted from the negligence of the defendant's servants.

5. SAME—*an instruction stating law of fellow-servants need not
embody rule of due care.* An instruction which only purports to
state the law with reference to the question of fellow-servants need·
not embody a statement in regard to the care required to be exer-
cised by the deceased for his own safety.

6. Same—*when refusal of instruction on fellow-servant question is proper.*  An instruction requiring the jury to find, as a matter of law, that the relation of fellow-servants existed if they believed certain facts to have been proved, is properly refused where that question, under the evidence, was one of fact, which was submitted to the jury by the instructions for both parites.

7. Trial—*permitting counsel to discuss question not referred to in opening argument is largely discretionary.*  Permitting counsel for the plaintiff in a personal injury case, in his closing argument to the jury, to discuss the question of damages, which was not referred to in the opening argument nor in defendant's reply thereto, is largely discretionary with the trial court, and is not ground for reversal unless a clear abuse of such discretion is shown.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county;  the Hon. E. Hanecy, Judge, presiding.

This is an action in case, brought in the superior court of Cook county by appellee against the appellant company to recover damages for the death of the appellee's husband, George Bovard, deceased, alleged to have been caused by the negligence of the appellant.  The trial below resulted in a verdict and judgment in favor of appellee, which judgment has been affirmed by the Appellate Court.  The present appeal is prosecuted from such judgment of affirmance.

The accident, which resulted in the death of the deceased, occurred on December 14, 1899, in the railroad yard of the Pittsburg, Fort Wayne and Chicago Railroad Company, commonly referred to as the Fort Wayne road, between Fifty-fourth and Fifty-fifth streets in the city of Chicago.

The original declaration, filed August 24, 1900, consisted of one count, and averred that the appellant was possessed of a locomotive engine then and there under the care of its servants, who were operating and driving the same upon and along a certain track, owned, leased or controlled by appellant at a point near the intersection of said streets; that appellant so negligently managed said engine, as to kick a

223—12

caboose car down an inclined track controlled by appellant, and ran it against the deceased, George Bovard, "while with all due care and diligence he was walking along said tracks with the knowledge and consent of defendant," and thereby threw him against another locomotive, and killed him. An additional count, filed February 27, 1904, alleged that the defendant was possessed of a certain engine and caboose, with which it was doing certain switching in the yard of a certain other railroad company in Chicago, and so carelessly managed said engine and caboose in doing said switching, that the caboose was run, or kicked with great force and violence, down a certain inclined track in said yard into and against a certain other engine; that the deceased was then employed by said other railroad company to work in said yards, and, while in the discharge of his duty as such employee, and exercising ordinary care for his own safety, he was then and there caught, crushed and injured by and between said caboose and engine, and that, as a result of his said injuries, he died.

On December 14, 1899, the deceased was a switch tender in said yard, and was hired and paid directly by the Fort Wayne company. A round-house for the housing of locomotive engines was located adjacent to the yard and in connection with certain tracks running in a northerly direction from Fifty-fifth street, and known respectively as the "coal track," "scale track," "caboose track," and "track 17," which latter was also known as the "lead track." The appellant, by some arrangement with the Fort Wayne company, used the yard or premises in question to a certain extent with its freight engines and cabooses. The engines went into the round-house, and the cabooses upon the caboose track. The appellant's engineers and firemen went with their engines, and its freight conductors and brakemen went with their cabooses. The engineers and brakemen, in handling the engines and cabooses of appellant, were hired and paid by appellant, though it is claimed by appellant that the work of

the switchmen, switch tenders and brakemen was under the control of a yard-master hired and paid by the Fort Wayne company. The claim of the appellee is, that the death of the deceased, who was a switch tender in the employ of the Fort Wayne company, was caused by the negligence of certain freight train brakemen in the service of appellant, commonly called the Pan Handle road, in starting a caboose unattended down an inclined track, whereby it was permitted to run down hill until it dashed into the side of a locomotive about which the deceased was employed, and the deceased was caught between the caboose and locomotive and so seriously crushed that he died shortly afterward.

A. N. Waterman, (George Willard, of counsel,) for appellant.

James C. McShane, for appellee.

Mr. Justice Farmer delivered the opinion of the court:

The appellant, upon the trial below, asked the court to give to the jury a written instruction to the effect that "the pleadings and all the evidence considered, the plaintiff is not entitled to recover; the jury will therefore return a verdict finding the defendant not guilty." The court refused to give this instruction, and such refusal is assigned as error. The instruction was properly refused, as there was evidence tending to show that appellant was guilty of negligence which caused the death of Bovard, and that, at the time of the accident, he, Bovard, was in the exercise of due care for his own safety, and that his death was not caused by the negligence of fellow-servants.

At the time of the death of the deceased on December 14, 1899, certain employees of the Fort Wayne road were running an engine slowly northward along the coal track, and, at the time of the collision, this engine was near the junction of the coal track and track 17. It was the duty of the de-

ceased to throw the switches for his engine thus running along the coal track. He occupied a shanty west of the coal track, and, for the purpose of throwing the switches located on the east side of the coal track, he came out of his shanty and crossed over north of the engine to a point east of the coal track. While the engine upon the coal track was passing him, the caboose in question, which had been kicked down track 17, ran into the side of the engine upon the coal track, and Bovard, being caught between the caboose and engine, was killed. Appellant's crew were switching the caboose out of the caboose track through the switch at the south end of the caboose track near Fifty-fifth street. They kicked the caboose in question down track 17, which was an inclined track, running from the elevation at Fifty-fifth street down to the coal track. No person was upon the caboose which was thus kicked down track 17, so that its movement could not be regulated or stopped by the use of a brake, or otherwise. As the track was a steep down-grade, there was nothing to stop the caboose until it struck the engine upon the coal track. The evidence shows that it was customary to have a brakeman, or conductor, or other employee, upon the caboose to control its movement, and, at this time, the conductor had gone to a telegraph office, and one of the brakemen ran after the caboose to try to catch it and stop it, but failed to do so. The evidence tends to show that the brakemen, who were switching out the caboose, were responsible for its running away.

There is evidence tending to show that the deceased was not guilty of any contributory negligence, inasmuch as he was merely doing his duty as a switchman in the employ of the Fort Wayne road in throwing the switches for the engine under the control of the Fort Wayne company, which passed along the coal track. The evidence also shows that he had no notice or knowledge of the approach of the unattended caboose upon track 17, which united with the coal track at the point where the accident occurred. The fireman on the

engine which was struck by the caboose, and another person thereon with the fireman, both testified that they did not see the caboose until it struck the engine, and there is testimony going to show that, when the deceased saw the approaching caboose, he attempted to get out of the space between the engine and the caboose, but failed to do so before the collision occurred. To permit the caboose to run down the inclined track while no person was on it for the purpose of controlling its movements, tended to prove negligence of appellant's brakeman or conductor, or both.

As we read the argument of counsel for the appellant, it is not seriously contended by them that the servants of the appellant, who permitted the caboose to run unattended down the inclined track, were not guilty of negligence. But the proposition advanced by them and chiefly relied on for a reversal of this judgment is, that the deceased switchman who was throwing the switch on the coal track for the passage northward of the Fort Wayne engine, and the brakemen of the appellant who were switching the caboose out of the caboose track and permitted it to run down the inclined track, were fellow-servants, and, therefore, that appellant is not responsible for the negligence of the brakeman which caused the death of the deceased switchman, Bovard.

Appellee takes the position that the question of whether the deceased was a fellow-servant with those in charge of appellant's engine and caboose is foreclosed by reason of the fact that appellant submitted to the jury on the trial a special interrogatory requesting the jury to find whether the deceased and those in charge of appellant's engine and caboose were fellow-servants, and that the jury found they were not. In this contention appellee is in error. The question submitted to the jury was simply a question of fact. Whether servants are fellow-servants is a mixed question of law and fact. (*Hartley* v. *Chicago and Alton Railroad Co.* 197 Ill. 440.) The jury may, upon a given state of facts, conclude that the relation of fellow-servants did not

exist, and yet the court may, upon the same facts, hold that, as a matter of law arising out of these facts, the relation of fellow-servants did exist. By presenting to the court the peremptory instruction to direct a verdict for appellant, and the court having refused such instruction, the question was saved as one of law.

The most usual requirement to constitute the relation of fellow-servants is that the servants are in the employ of a common master. (*Chicago and Alton Railroad Co.* v. *Raidy,* 203 Ill. 310; *Chicago and Alton Railroad Co.* v. *Harrington,* 192 id. 9.) To this there seems to have grown the exception arising from the lending, between employers, of the servants of one to the other. In the latter case, where the servant is temporarily loaned by the master to another for some special service and the servant for the time becomes wholly subject to the direction and control of the person to whom loaned and for whom the special service is being·performed and is wholly freed during such time from the direction of his master, he becomes the servant, for the time, of the person to whom loaned or hired, and during such time may bear the relation of fellow-servant to the other servants of the master to whom he is thus loaned. *Grace & Hyde Co.* v. *Probst,* 208 Ill. 147.

The particular contention made by appellant grows out of the fact that at the time the injury was received the engine and caboose operated by appellant's servants were in the switch yards of the Fort Wayne company. The latter company has what is known as a yard-master, who directs what tracks shall be occupied or used by engines, trains or cars coming into said yards. Out of these facts appellant advances the theory that during the time the engine and caboose were in the yards of the Fort Wayne company those in charge of it were subject to the control of the yard-master of that company, and that the deceased was also subject to the control of the yard-master of that company, and therefore they were fellow-servants. We have examined

the evidence sufficiently to be satisfied that this position is unsound. Appellant claims that the yard-master and the servants of appellant and the deceased were engaged in a common enterprise, for a common purpose. We do not think this statement is sustained by the evidence. There was no purpose held in common between the yard-master and the servants of appellant in charge of this engine and caboose or between the deceased and said servants of the appellant. The appellant was simply passing through the yards in the control of the Fort Wayne company, and the company, in order to avoid confusion and protect its own business, directed what tracks should be occupied by trains of other companies coming into that yard, but gave no further or other directions than those. The negligence charged in this case was allowing the caboose to go down the switch by force of gravitation and without any one in charge of it, in such a manner that the deceased had no warning of its approach until escape was impossible. That is the theory of the declaration and the theory of the proof, with sufficient evidence to support it and fully warrant the court in submitting the question to the jury. Appellant's servants were not pursuing the business of the Fort Wayne company, but the business of appellant. They were not loaned to the Fort Wayne company, nor under its command or control further than was necessary to obey the commands of its yard-master in the use of its tracks. The yard-master gave no commands or directions as to how the switching should be done and was in no manner responsible for the caboose being thrown down the inclined switch with no one in control of it; nor did the deceased in any manner co-operate in the acts of the servants of appellant, nor, so far as the record discloses, have any knowledge of their presence in the yards until at the moment of his injury.

The appellant complains that the second instruction given by the trial court in behalf of the appellee upon the trial below is erroneous. That instruction is as follows:

"The court instructs the jury that to constitute defendant's servants, who were switching the caboose in question, fellow-servants of George Bovard, deceased, so as to exempt the defendant from liability on account of the death of deceased from the negligent acts of defendant's said servants, (provided you believe from the evidence deceased's death was caused by the negligent acts of said servants,) said servants and deceased should be actually co-operating, just before and at the time of the collision which caused deceased's death, in the particular business in hand, or their usual duties should bring them into habitual consociation with each other, so that they might exercise an influence upon each other promotive of proper caution for their personal safety."

The instruction is in accordance with the language used by this court in *Chicago and Alton Railroad Co.* v. *O'Brien,* 155 Ill. 630, and *North Chicago Rolling Mill Co.* v. *Johnson,* 114 id. 57. The instruction is charged with being erroneous upon two grounds: First, because it is said to assume that the death of the deceased resulted from the negligence of appellant's servants; and second, that it omits to condition the right of recovery upon the exercise of due care on the part of the deceased. Neither of these objections is well taken. As to the first, the jury are required to believe from the evidence that the deceased's death was caused by the negligent acts of appellant's servants, and, therefore, such negligence is not assumed to have existed. As to the second objection, the instruction only purported to state the law in reference to the question of fellow-servants, and, therefore, it was unnecessary to embody in the instruction a statement in regard to the care of the deceased for his own safety. In *Chicago and Eastern Illinois Railroad Co.* v. *Hines,* 132 Ill. 161, it was said: "It is not required that the entire law of the case shall be stated in a single instruction, and it is therefore not improper to state the law as applicable to particular questions, or particular parts of the case, in separate instructions." The criticism cannot be

made upon this instruction that it states, if certain facts are found, the jury may render a verdict for the plaintiff, and omits certain other facts necessary to be found in order to entitle the jury to find for the plaintiff. The instruction, on the contrary, merely states a rule in regard to fellow-servants which would exempt appellant from liability.

It is also said the court below erred in refusing to give the first instruction asked by the appellant. This instruction was properly refused, because it required the jury to find that if certain facts were found the relation of fellow-servants existed between the deceased and the yard-master, as a matter of law. Here, under the evidence, the question as to whether the relation of fellow-servants existed was a question of fact, and submitted to the jury for their decision by the instructions asked by and given for both sides.

It is furthermore assigned as error that improper remarks were made by counsel for appellee in his closing argument to the jury. In his closing argument to the jury, counsel for appellee argued the question as to the amount of damages to which appellee was entitled, and stated that the appellee, as the widow of the deceased, and her children, were entitled to the sum of $5000, being the maximum fixed by the statute in such case, as damages for the death of the husband and father. The reason why these remarks of counsel in his closing address are alleged to be improper, is the claim that the question of damages was not discussed by counsel in his opening argument. This objection is without force, because it does not appear from the record that the question of damages was not discussed by both counsel before appellee began his closing address to the jury. As is well said by the Appellate Court in its opinion deciding this case: "It is sufficient to say in relation to the objection made—that the court should have prevented counsel for appellee from arguing the question of damages in his last address to the jury, or have allowed appellant's counsel to reply—that there is nothing in this record showing the

basis of such complaint, namely, that the subject of damages had not before in the argument been discussed."

But if it be assumed that no prior reference had been made to the question of damages, it was not reversible error to permit counsel for appellee to refer to that subject in his closing address. "A concluding argument ought properly to be confined to the grounds stated and points of law announced in the opening argument, and a reply to what has been brought out in the argument of opposing counsel; but where the court permits counsel to comment upon matters in evidence not discussed by his opponent, and the latter is afforded no opportunity for reply, the Appellate Court will not reverse the judgment unless a clear abuse of discretion is shown." (2 Ency. of Pl. & Pr. pp. 708, 709.) In *Hull & Co.* v. *Alexander*, 26 Iowa, 573, it is said: "The objection that the court permitted counsel for the defendants in their closing arguments to refer to and comment upon other portion of these defendants' answer in the foreclosure case than such as were referred to by plaintiff's counsel, and no opportunity afforded for a reply to such new portions, pertains to a question of discretion in the district court, and no abuse of such discretion is shown." So, in the case at bar, it may be said that questions of this kind are matters resting in the sound discretion of the trial court. It does not appear in the case at bar that there was any abuse of that discretion by the trial court which was prejudicial to the appellant.

We see no good reason for reversing the judgment in this case. Accordingly, the judgment of the Appellate Court, affirming the judgment of the superior court, is affirmed.

*Judgment affirmed.*