No. 29,755.

ODA BARNABY, *Appellant,* v. SEARS, ROEBUCK & COMPANY, *Appellee.*

(295 Pac. 715.)

Opinion filed February 7, 1931.

*John W. Adams,* of Wichita, for the appellant.

*Arnold C. Todd, Hal M. Black* and *Carl O. Bauman,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for damages for personal injuries. The trial court sustained a demurrer to plaintiff's evidence and he has appealed.

The pertinent facts disclosed by the record may be thus stated: Defendant operates a number of retail stores and handles almost "everything from a threshing machine down." At Wichita it has a large warehouse where it receives, stores, sorts and distributes merchandise. About twenty men are employed to handle merchandise in the warehouse. Plaintiff was one of the men so employed, and had been working at that work for a little more than a month at the time he alleges he received the injury which forms the basis for this action. Plaintiff had been employed by Smith, the superintendent of defendant's warehouse, who later introduced plaintiff to one Ackley as his foreman, and after the first week plaintiff received orders from Ackley as to the work he was to do. Ackley worked with the other men, doing the same kind of work they did. On the day in question plaintiff and three of the other men employed in the warehouse—Ackley, Swan and Jones—appear to have been working together. They were planning to move some stoves, which had been arranged in tiers with an aisle thirty-two inches wide between them, from one side of the aisle to the other. The stove being moved at the time plaintiff received his injury was crated and weighed about 500 pounds, and was on top of a similar stove, and was to be moved across the aisle and set on top of a stove on that side of the aisle. Ackley stood on top of the stove across the aisle from the one to be moved, reached over and took hold of the top of it, and said to the other men: "Get hold and let's move this across," or words to that effect. Plaintiff got hold on one side and Swan on the other. Jones had not yet taken hold of the stove when Ackley leaned across the aisle from where he was standing, took hold of the top of the stove and gave it a jerk. The stove was almost as wide as the aisle, but as it was pulled forward and the weight came on the men on each side plaintiff was not able to hold his side up; it tilted toward him, so that more of the weight of the stove was on plaintiff, with the result that his back was injured. Swan seems to have caught the stove so that it did not fall entirely on plaintiff, and held it until plaintiff could get out of the way. Plaintiff had "a congenital anomaly of the spine; . . . that

was due to bony deformity in the back. . . . Two bones that were supposed to have grown together did not do so. There was a very severe instability between the fifth lumbar and first sacral, and there was, besides that, another vertebra had failed to fuse, . . . which . . . makes for a weak spine, . . . easily the subject of strain. . . . He had a mechanically poor back; has had all his life." This condition was unknown to the defendant, and apparently had not interfered with his work in the warehouse prior to the incident in question.

As a basis for recovery plaintiff pleaded negligence of defendant in not furnishing plaintiff a safe place to work, in not furnishing proper appliances with which to do the work, and negligence of Ackley in giving the stove a jerk before the other men, particularly Jones, had time to get hold of it. The evidence disclosed nothing unsafe in the place and nothing lacking in the appliances, or that any appliances were either necessary or practical. Appellant argues that boards might have been laid across the aisle, but there is no evidence that this was deemed necessary, or if it was that there were not plenty of boards available which could have been used for that purpose. (26 Cyc. 1106; 39 C. J. 326, 507.) So, if plaintiff could recover at all, it would be because of the fact that Ackley gave the stove a jerk without waiting for the other men to have time properly to get hold of it. Whatever the evidence might disclose with reference to Ackley being foreman to the extent that he would direct plaintiff and others working with him as to what should be done, it is clear from the evidence that in the moving of this stove he was a fellow workman with the plaintiff. Hence if there was any negligence on his part it was the negligence of a fellow workman, for which negligence to plaintiff the defendant was not liable. (*Lunn v. Morris*, 81 Kan. 94, 105 Pac. 15; *Bridge Co. v. Miller*, 71 Kan. 13, 80 Pac. 18; *Donnelly v. Packing Co.*, 68 Kan. 653, 75 Pac. 1017; *Nelson v. City of Salina*, 123 Kan. 522, 256 Pac. 123; *Carter v. Uhrich*, 125 Kan. 192, 264 Pac. 31.)

The relations of plaintiff and defendant were that of master and servant. Defendant assumed the ordinary risks of his employment, including that of the negligence of a fellow servant. (See cases last above cited.) A servant assumes the ordinary risks and dangers of his employment and the extraordinary risks and dangers which he knows and appreciates. (*Hunter v. Barnsdall Refining Co.*, 126

Kan. 277, 268 Pac. 86; *Gillaspie v. Iron-works Co.*, 76 Kan. 70, 90 Pac. 760; *Walker v. Scott*, 67 Kan. 814, 64 Pac. 615.)

There is nothing in the record to indicate that plaintiff could not see and appreciate any risk or danger to him in attempting to move the stove.

From what has been said it necessarily follows that the judgment of the trial court must be affirmed.

It is so ordered.