J. A. Ryder, and J. A. Ryder, and H. F. Ryder as co-partners, doing business under the firm name and style of Ryder Trucking & Supply Company, v. Z. D. Plumley.

189 So. 422

Division A

Opinion Filed June 2, 1939

380

*William J. Pruitt* and *Walter Kehoe,* for Plaintiffs in Error;

*E. F. P. Brigham,* for Defendant in Error.

THOMAS, J.—Plaintiffs in error were engaged in the garage business and J. Y. Gooch Company were general contractors who employed defendant in error, a laborer. The Gooch Company hired plaintiffs in error to transport certain heavy machinery from Miami to Miami Springs by truck. Defendant in error was bidden by his employer to assist in the loading, transportation and unloading of the equipment. The driver of the truck was an employee of the plaintiffs in error and chose the route to be followed to Miami Springs. While hauling the machinery, the defendant in error riding on the load in the rear of the truck, the driver carelessly and negligently rounded a curve with such speed that the entire load, defendant in error included,

was swept to the ground and he was painfully injured. This is the substance of the declaration.

In addition to the plea of not guilty, plaintiffs in error presented the defenses that the truck driver and defendant in error were, at the time, servants of the same master; that defendant in error. was, therefore, injured by a fellow servant; that defendant in error and the truck driver were engaged in a joint enterprise; and that the former contributed to his own injury.

The jury returned a verdict for $5,000.00. The judge placed his stamp of approval on the finding by entering judgment for that amount and denying motion for new trial, and defendants brought error.

From the testimony we learn that the master of defendant in error had been engaged in the business of general contractor for many years and had often employed plaintiffs in error to do the hauling incident to that work. At the time relevant to this controversy plaintiffs in error were employed to move tools, lumber and the like, for an agreed price of two dollars twenty-five cents an hour. The driver of the truck was the servant of plaintiffs in error and no authority was vested in the Gooch Company to discharge him, nor did this company exercise any control over the trucks by furnishing drivers, fuel or storage.

At the time defendant in error was injured he had assisted in loading the truck of plaintiffs in error with heavy materials, including a saw, and at the direction of the superintendent of the Gooch company took his place on the rear of the truck for the twofold purpose of watching the load and helping to discharge it at the destination. As a curve was negotiated the burden, with defendant in error on it, was thrown to the ground.

This is a resume of the story as the witnesses have told it. There are conflicts as to the speed of the truck at the

time of the accident, the activity of the foreman of the Gooch Company in directing the placing of material on the truck and the route to be followed by it, but as we construe the pleadings the evidence and the theory of the case there was justification for the finding of the jury that plaintiffs in error were responsible for the injury because of the manner in which the truck was driven.

In their effort to gain a reversal, plaintiffs in error argue that the supervision exercised by the foreman of the general contractors who employed them to haul the material was of such degree that servant of plaintiffs in error became for the nonce the servant of the contractors. In any event, to prevail by substantiating the second, third, or fourth pleas it was necessary that the truck driver be proven the servant of the Gooch Company. This burden was not met. He was employed at least impermanently, paid and his work supervised by plaintiffs in error. They alone could discharge him. In the furtherance of his master's business by transporting goods of another he was temporarily directed in loading the truck but there is no ground for holding that in doing so in the manner shown, notwithstanding the part played by the foreman, his status as an employee of plaintiffs in error underwent a complete metamorphosis and that until he returned from his mission he was the servant of another.

We think there is a clear distinction between the facts with which we are dealing and those recited in the case of Hasty v. Sears, 157 Mass. 132, 31 N. E. Rep. 759, cited by plaintiffs in error in support of their position. There a carpenter was lent to another by his employers, a company who were not contractors. In the course of his work in repairing an elevator he was injured by the operator, and the court held that they were fellow servants. The element of lending is absent here and the plaintiffs in error were

engaged in their accustomed business of transportation of goods for hire, as they had been for a long period during which they had served the Gooch Company precisely as they were serving when the accident occurred.

Another case given by plaintiffs in error to support their position seems to plainly depict the distinction between situations where a servant sent to work for another becomes the servant of such other and where he does not. A millwright employed by a machine company was sent to a mill to do work in the course of that employment. This work finished, the mill superintendent directed him to perform another and different task when he was injured by the engineer of the mill. It was held that he and the engineer were fellow servants. Delory v. Blodgett, 185 Mass. 126, 69 N. E. Rep. 1078. The test elaborated upon in that decision from the Supreme Judicial Court of Massachusetts is not met by the facts in this case.

In Dansby v. Bartlett, 318 Ill. 616, 149 N. E. Rep. 591, there appears a discussion of the respective liability of the owner of cars for hire and the hirer for damages to a guest of the latter by the chauffeur of the former. The following excerpts from the opinion are pertinent:

"Whether appellant was liable depends upon whether he was the master and the driver of the car was his servant. Perhaps the most universal and unfailing test in determining the relation of master and servant is where the control of the servant includes the power to discharge. Where that is so, the relation of master and servant exists." 149 N. E. Rep., text 593.

"Where the servant of the general master is temporarily loaned or hired to another for some special service and becomes for the time wholly subject to the control of the person to whom he is loaned or hired and wholly free from the control and direction of the general master, he becomes

the servant, for the time being, of the person to whom he is loaned or hired and during such time becomes the servant of the latter. Pittsburgh, Cincinnati, Chicago & St. Louis R. Co. v. Bovard, 223 Ill. 176, 79 N. E. 128. The proof does not show Saracino surrendered the manner in which the car should be driven wholly to the control and direction of appellant. The driver while performing a special service for appellant, was performing work of his employer, Saracino, within the scope of his employment, viz., driving cars for persons who hired them from his employer. Many of the cases above cited expressly hold that the right of the hirer to direct the driver when and where to go, whom to haul, and the route to travel, does not place the driver under the control of the hirer as to the manner of driving the car. In that regard he is doing the work for the general employer and is not subject to the control of the hirer. In this case appellant was not authorized to discharge a reckless driver and replace him with another driver. At most he could dismiss the car and driver." 149 N. E. Rep. 595, 596.

Though this question is one of law, Dansby v. Bartlett, *supra,* for plaintiffs in error to have prevailed it was their burden to prove the affirmative defenses. Taylor v. Prairie Pebble Phosphate Co., 61 Fla. 455, 54 South. Rep. 904. In this plaintiffs in error failed.

There was ample evidence to lead the jury to a conviction that the damage suffered proximately resulted from the negligent operation of the truck by the servant of plaintiffs in error. Concluding thus liability was established as charged in the declaration.

What we have written disposes of the plea of contributory negligence. Taylor v. Prairie Phosphate Co., *supra.*

We reach the assignment of error based on refusal of the court to grant a motion for a mistrial. The defendant in error testified on direct examination that: "The insur-

ance doctor who treated me I believe was Dr. Vogt," and on cross examination:

"I said the first doctor that saw me was Dr. Vogt, the insurance doctor, I mean by that: He was the first one that seen me in the hospital, but he wasn't the first doctor. The internes took care of me until Dr. Vogt got there. I suppose he was the insurance doctor."

Immediately the court was requested to declare a mistrial because of the mention of an insurance company. The court was eminently correct in denying the motion. The incident does not justify the importance which plaintiffs in error seek to give it. Men sworn to well and truly try an issue according to the evidence would hardly compromise their consciences and violate their solemn oaths because of an inadvertant reference to an "insurance doctor." The judge is to be commended on the fairness he showed by instructing the jury before any other testimony was given:

"Gentlemen of the jury, the witness in response to some question has referred to the fact that some insurance company doctor called on the witness. Sometimes insurance companies do defend law suits, but in this case there is no insurance company involved, and as far as inference you have been able to draw from the answers of the witness then an insurance company is involved in this law suit, the court instructs you upon inquiry from counsel I find that no insurance company is involved here."

Any possible prejudice which could have been introduced into the case by the remarks we have quoted were certainly dispelled by the charge of the court.

The last question which we must determine is whether the verdict was excessive. Defendant in error was employed at the wage of $18.00 weekly. He was incapacitated for about four months, was bedridden for half of that time and the remainder was able to move around with the aid

of crutches. He expended or became liable for $58.00 for services of a physician. There was no proof of permanent injury.

Though damages in such cases are impossible of exact computation, it seems that the sum of $5,000.00, considering the age of defendant in error, his earning capacity, the amount due for the services of a physician, the lack of permanent injury and the length of time he was unable to work, is excessive.

We affirm the judgment of the lower court upon entry of a remittitur of two thousand dollars, otherwise the cause is reversed.

TERRELL, C. J., and BUFORD, J., concur.

WHITFIELD, J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.