**KELLEY v. SUMMERS et al.**

**PACIFIC EMPLOYERS INS. CO.**
**v.**
**KELLEY et al. (two cases).**

**KELLEY v. MARTIN et al.**
Nos. 4643–4646.

United States Court of Appeals,
Tenth Circuit.

Feb. 23, 1954.

Rehearing Denied April 5, 1954.

Roy C. Davis and Robert Y. Jones, Hutchinson, Kan. (Frank S. Hodge, Eugene A. White and H. Newlin Reynolds, Hutchinson, Kan., on the brief), for C. W. Kelley.

William Tinker, Wichita, Kan. (Getto McDonald, Arthur W. Skaer, Hugh P. Quinn and William Porter, Wichita, Kan., on the brief), for Pacific Employers Ins. Co. and Ruby Joyce Summers.

William Tinker, Wichita, Kan. (John J. Watts and Warren Burnett, Odessa, Tex., on the brief), for M. C. Martin.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

For convenience, E. L. Farmer & Company will be hereinafter referred to as Farmer; Clyde Sawyer, assistant manager of Farmer, as Sawyer; James E. Jones, now deceased, as Jones; Ruby Joyce Jones, now Ruby Joyce Summers, as the widow of Jones; M. C. Martin as Martin; Pacific Employers Insurance Company as the insurance company; C. W. Kelley, doing business under the trade name of C. W. Kelley Transport, as Kelley; and Wray Kelley as Wray.

Farmer was engaged in the trucking business at Odessa, Texas; and among other things, it transported oil-well pipe for hire. Farmer was a subscriber to the Workmen's Compensation Act of Texas, Vernon's Ann.Civ.St. art. 8306, and the insurance company was its insurance carrier under the Act. Jones and Martin were in the employ of Farmer as truck drivers. A pipe and supply company in Texas made arrangements with Farmer to transport to Odessa certain used pipe then lying on the ground near Burrton, Kansas. For that purpose, Farmer sent to Kansas eight trucks and truck drivers, including Jones and Martin. Sawyer accompanied the group in an automobile. Kelley was engaged at Hutchinson, Kansas, in the business of trucking and transporting machinery, oil field equipment, and petroleum products; and his employees

were under the Workmen's Compensation Act of Kansas. G.S.1949, 44–501 et seq. Wray was a regular employee of Kelley, and he was a qualified operator of caterpillar tractors and booms. Upon arriving in Kansas, Sawyer went to Kelley's place of business and made known to Wray his desire to secure suitable equipment and an operator for use in loading the pipe on the trucks. Wray showed Sawyer a caterpillar tractor and boom and it was agreed between them that such equipment would be used; that Wray would be the operator; and that the rental for the equipment and operator would be $8.50 per hour. The boom was approximately eighteen feet long. Two cables extended from drums or attachments near the operator's position over pulleys at the end of the boom. When Wray and the equipment arrived at the location, Sawyer told him and the truck drivers that the loading operations would begin at the north end of the field and follow the line of pipe to the south. The general plan of operation was that the drivers of two of the trucks not being loaded walked along, carried the ends of the cables attached to hooks, and inserted the hooks in the ends of the pipe. When the hooks had been inserted in the ends of the pipe and the truck being loaded was in position, the pipe was elevated by means of the boom being operated by Wray and placed on the truck. The truck drivers carrying the ends of the cables and inserting the hooks in the ends of the pipe also held the rope fastened to the hooks and guided the pipe being elevated to position on the truck, and then they took out the hooks when the pipe was loaded. If a piece of pipe was not to be picked up, they motioned Wray forward with the tractor and boom. And they gave signals for more slack when it was needed. As each piece of pipe was loaded, the tractor and boom, the truck being loaded, and the men engaged in the loading moved on to the next piece and the operation was repeated. Operations began in the afternoon. After two trucks had been loaded, Sawyer told Wray and the truck drivers to quit for the day and that loading operations would be resumed the following morning. On the following morning, Jones and Martin were carrying the cables and inserting the hooks in the pipe. As the tractor and boom were being moved from the location of one piece of pipe to that of the next, the boom came into contact with the high tension electric line. Jones suffered a shock from which he died and Martin sustained personal injuries. Sawyer was not present at the time of the accident but he arrived soon afterwards and remained there until the loading of the trucks was completed. Pursuant to proceedings had in Texas about which there is no present controversy, the insurance company paid or obligated itself to pay to the widow of Jones for herself and her minor children an aggregate amount of $8,427.50 as death benefits to the dependents of Jones; and pursuant to like proceedings about which there is no controversy, the insurance company paid or obligated itself to pay to Martin an aggregate sum of $933.00.

The widow of Jones, acting in her own behalf and in behalf of the two minor children of herself and Jones, instituted in the United States Court for Kansas an action against Kelley to recover damages for the death of Jones. Jurisdiction was predicated upon diversity of citizenship with the requisite amount in controversy. Negligence on the part of Wray in the operation of the tractor and boom was pleaded as the proximate cause of the accident and resulting death. Martin instituted in the same court a similar action against Kelley seeking damages for his injuries. With leave of the court, the insurance company intervened in each case asserting its right of subrogation and seeking to recover as against Kelley the amount of its payments, such recovery to be out of any damages awarded to plaintiff. After the complaint in intervention had been filed in each case, Kelley filed an amended answer to the complaint of

plaintiff and an answer to the complaint in intervention. In such pleading, Kelley denied negligence on his part; pleaded that the sole rights of the widow and surviving children of Jones, and of Martin, were under the Workmen's Compensation Act of Texas; pleaded that Wray was a loaned employee and therefore a servant of Farmer; pleaded that since Jones, Martin, and Wray were employees of Farmer, they were fellow servants; pleaded that Jones and Martin assumed the risk of negligence, if any, on the part of their fellow servant, Wray; pleaded that negligence on the part of Jones and Martin was the proximate cause of the accident with resulting death and injury; and pleaded that Jones and Martin had knowledge of the dangers of the employment and assumed the risk inhering therein. The cases were consolidated for purposes of trial. On the day before the trial to the jury began, the insurance company moved to withdraw and dismiss without prejudice the two complaints in intervention; and the motion was sustained.

The jury returned a verdict in favor of the widow of Jones in the sum of $15,000, and a verdict in favor of Martin in the sum of $18,200. In response to special interrogatories, the jury found that immediately prior to the time the boom came into contact with the electric power line, the line was clearly observable to Wray, to Jones, and to Martin; that neither of such persons saw the electric line prior to the time the boom came into contact with it; that no person connected with the loading of the pipe warned Wray of the presence of the high tension wire or of the danger of the boom coming into contact with it; that Jones had an opportunity at least equal to that of Wray to observe the overhead wire or of the dangerous situation in time to avoid the accident; that Martin did not have an opportunity at least equal to that of Wray to observe such overhead wire or the dangerous situation in time to avoid the accident, but the court disapproved that particular finding; that negligence on the part

of Wray in failing to observe properly all obstructions in the path of the tractor and boom was the proximate cause of the accident; and that Jones and Martin were not guilty of contributory negligence. After the return of the verdicts and findings but before entry of judgment, the insurance company, without obtaining leave of court, again filed in each case a motion to intervene, attaching thereto a complaint in intervention in substantially the same language as the previous one. The court determined that in its judgment the verdict in favor of Martin was excessive and that unless a remittitur was filed reducing the amount to $9,000 a new trial would be granted; and the remittitur was filed. The judgment, entered after the filing of the remittitur, provided that the motions of the insurance company to intervene the second time be denied; that the widow of Jones recover from Kelley the sum of $6,572.50, representing the amount of the verdict in her favor less the aggregate amount of workmen's compensation paid her; and that Martin recover from Kelley the sum of $8,067.00, representing the amount of the verdict in his favor as reduced by the remittitur, less the amount of workmen's compensation paid him. Kelley appealed from that part of the judgment making awards against him; and the insurance company appealed from that part denying its motions for leave to intervene, and for failure of the court to grant it recovery as prayed in the complaints in intervention.

Kelley challenges the judgment against him on the ground that it was not his work which was being performed by Wray at the time of the accident; that he had no right of control of the activity or movements of Wray which could have caused or contributed to the cause of the accident; and that therefore he is not liable for damages arising proximately from negligence on the part of Wray in the operation of the tractor and boom. It is argued that Wray was a loaned or hired servant

**670**

of Farmer while engaged in the loading of the pipe. As we understand, it is the general rule in Kansas that a servant may be lent or hired by his master to another for some special purpose and become the servant of such other person in the performing of the particular service contemplated by the loan or hire. Moseman v. L. M. Penwell Undertaking Co., 151 Kan. 610, 100 P.2d 669. But while a person in the general employ of one person may be lent or hired to another in such way as to become the servant of the person to whom he is lent or hired for the time and the occasion, the mere fact that an employee is sent to do certain work pointed out to him by the person who has made an arrangement with his general employer, standing alone, does not make him that person's servant. Driscoll v. Towle, 181 Mass. 416, 63 N.E. 922; cf. Garner v. Martin, 155 Kan. 12, 122 P.2d 735. And where the owner of machinery or equipment hires or rents it together with an operator in his employ to operate it while performing the particular service contemplated by the hiring or renting, the presumption is that the employee remains the servant of the owner. Malisfski v. Indemnity Insurance Company of North America, 4 Cir., 135 F.2d 910; Baltimore Transit Co. v. State, 184 Md. 250, 40 A.2d 678; Pennsylvania Smelting & Refining Co. v. Duffin, 363 Pa. 564, 70 A.2d 270, 17 A.L.R.2d 1384.

■ Kelley was engaged in part in the business of hiring or renting equipment with an operator in his employ to perform service for others. The agreement between Sawyer and Wray was that Kelley would rent or hire to Farmer a caterpillar tractor and boom together with an operator to operate the equipment while engaged in the loading operations at a fixed rental or hire of $8.50 per hour. It was further agreed that Wray would be the operator. But it was not expressly agreed that Kelley should relinquish completely his authority over Wray while engaged in the specific service. Farmer, through its servants and employees, told Wray when to start,

pointed out to him the particular pipe to be elevated, told him when to stop for the night, and told him when to resume the following morning. But there is no indication in the record that Farmer had or exercised authority to direct Wray in respect to the manner in which he should operate the tractor, raise and lower the boom, or otherwise manage the equipment. If dissatisfied with the manner in which Wray operated the equipment, Farmer could have discontinued the use of the equipment and its operation by Wray, but there is nothing in the record to indicate that Farmer had power or authority to discharge Wray and place the equipment in charge of another operator. On the contrary, it is clear that Farmer did not have any such power. Kelley alone could discharge Wray, take the equipment from his management and control, and place another operator in charge of it. Kelley furnished the fuel for the equipment, transported it to the place of operation, and returned it to his place of business at the conclusion of the service. At the time of the accident, Wray was engaged in performing a special service for Farmer pursuant to an arrangement between Kelley and Farmer, but in doing so he was rendering for Kelley service embraced within his general employment by Kelley, for which Kelley paid him his regular salary. We are clear in the view that under the undisputed facts shown at the trial, Wray remained and was the servant of Kelley. Doty v. Lacey, 114 Cal.App.2d 73, 249 P.2d 550; Hodges v. Holding, 204 Okl. 327, 229 P.2d 555; Charles v. Barrett, 233 N.Y. 127, 135 N.E. 199; Densby v. Bartlett, 318 Ill. 616, 149 N.E. 591, 42 A.L.R. 1406; Babbitt v. Say, 120 Ohio St. 177, 165 N.E. 721; Haney v. Northwest Cartage Service Corp., 336 Ill.App. 97, 82 N.E.2d 826; Thatcher v. Pierce, 281 Pa. 16, 125 A. 302; Wills v. Belger, 357 Mo. 1177, 212 S.W.2d 736; Ryder v. Plumley, 138 Fla. 378, 189 So. 422. In reaching this conclusion, we are not unmindful of Moseman v. L. M. Penwell Undertaking Co., supra, on which

Kelley places strong reliance. But that case is distinguishably different from this one. There a truck owned by Forrest H. Harrell and driven by William F. Lindeman struck a boy and he was killed. The action was by the surviving parents of the deceased boy against an undertaking company. Issue was joined between the parties as to whether Lindeman was the servant of the undertaking company or of Harrell at the time of the accident. Evidence was adduced tending to show these facts. Harrell was a florist and the truck was used in his business for the purpose of delivering flowers to customers and to funerals. When flowers were ordered for a funeral, Harrell delivered them to the place of the funeral. Ordinarily the undertaker in charge of a funeral transported the flowers from the place of the funeral to the cemetery. Lindeman was a regular employe of Harrell. On the day in question, the manager of the undertaking company told Harrell that they had more flowers for a certain funeral than they could handle and inquired whether they could use Harrell's truck. Harrell consented, and the manager of the undertaking company told Harrell to have the truck report to the Masonic Temple, park under the fire escape, and report to the undertaking company. Harrell sent Lindeman with the empty truck and directed him to follow the instructions of the undertaking company. The accident occurred after the truck had been loaded with flowers and was enroute with them to the cemetery. After the accident, the manager of the undertaking company told Harrell that there was nothing for him to worry about as the truck and the driver were in the service of the undertaking company and that it was no more than right that the undertaking company should offer to bury the boy without expense to the family. There it was not part of Harrell's regular business to lend or otherwise furnish the truck to undertakers for the transportation of flowers from the place of a funeral to the cemetery. Here, it was part of the regular business of Kelley to rent or hire the equipment with an operator on a rental basis. There, the owner of the truck expressly directed the driver to follow the instructions of the undertaking company. Here, no one on behalf of Kelley expressly directed Wray to follow the instructions of Farmer in respect to the manner of operating the tractor and boom. There, the manager of the undertaking company stated that at the time of the accident the truck and driver were in the service of the undertaking company. Here, no such statement was made on behalf of Farmer.

 Kelley attacks the judgment against him on the further ground that the substantive law of Kansas applies in respect to his liability and that under the fellow-servant rule which obtains in that state the widow of Jones, and Martin, were not entitled to recover. In support of the contention it is said that Wray, Jones, and Martin were working in a common employment under the same general direction and control; that it is not necessary to determine who had such direction and control or right of direction and control since the fellow-servant rule would apply in any event; and that the three of them being fellow servants, the widow of Jones, and Martin, were not entitled to recover for death in one instance and injury in the other proximately caused by the negligence of Wray in the operation of the tractor and boom. It is the well established rule in Kansas that where co-employees under the control of one master are engaged in the discharge of duties directed to one common end and their duties are so closely related that each employee must know that he is exposed to the risk of being injured by the negligence of another, they are fellow servants and the master is not liable for the death or injury of one proximately caused by the negligence of the other. Donnelly v. Cudahy Packing Co., 68 Kan. 653, 75 P. 1017; Atchison & Eastern Bridge Co. v. Miller, 71 Kan. 13, 80 P. 18, 1 L.R.A.,N.S., 682; Miller v. Armour

& Co., 95 Kan. 690, 149 P. 682; Carter v. Uhrich, 125 Kan. 192, 264 P. 31; Barnaby v. Sears, Roebuck & Co., 132 Kan. 447, 295 P. 715; Burroughs v. Michel, 142 Kan. 814, 52 P.2d 633. But Wray, Jones, and Martin, were not co-employees of a single master. Wray was an employee of Kelley and Jones and Martin were employees of Farmer. Not all being coemployees of a single master, the widow of Jones, and Martin, were not precluded by the fellow-servant rule from recovering from Kelley for death in one instance and injury in the other arising proximately out of negligence of Wray.

Kelley seeks to escape liability on the ground that negligence on the part of Jones and Martin was a proximate cause of the accident. The point is amplified by the argument that Jones and Martin had the clearest view and opportunity to observe the high tension line and to avoid the danger by simply dropping their hold on the hooks and that their failure to keep a proper lookout and exert reasonable care to avoid danger constituted negligence on their part. Wray was operating the tractor and boom. It was his duty to know the position of the boom, to exercise reasonable care in observing conditions immediately adjacent to the boom, to exercise reasonable care to discover the presence of the high tension line, and to exercise like care to prevent the boom coming into contact with the wire. The duties of Jones and Martin were to place the hooks in the ends of the pipe lying on the ground, to guide the pipe when elevated to its position on the truck, and then to disengage the hooks from the pipe. It was not their duty or responsibility to keep a lookout to see that the boom did not come into contact with a high tension overhead wire or other obstruction above the work being done. In any event, the court under instructions to which there can be no criticism submitted to the jury the question of contributory negligence on the part of Jones and Martin. The jury resolved the issue against Kelley, and the finding must stand on appeal.

Kelley advances the further contention that by the recovery of workmen's compensation, the widow of Jones, and Martin, are barred from recovering in this action. The substance of the argument in support of the contention is that if Jones and Martin be treated as employees of Farmer, upon the recovery of workmen's compensation, any right of action which they may have had against Kelley became barred under the Workmen's Compensation Act of Texas; and that if Jones and Martin be treated as special employees of Kelley, with the right to recover benefits under the Workmen's Compensation Act of Kansas, the remedy under such Act is exclusive as between them and bars these actions. The courts in Texas have iterated and reiterated the rule that the recovery of benefits under the Workmen's Compensation Act of that state does not preclude an injured workman or the dependents of a deceased workman from maintaining a common law action for damages against a third party tort-feasor whose negligence caused the injury or death; but if the insurance carrier is not a party to the action the amount recovered from the wrongdoer is limited to the excess of damages over the compensation collected. Lancaster v. Hunter, Tex.Civ.App., 217 S.W. 765; Hanson v. Ponder, Tex.Com.App., 300 S.W. 35; Pedigo & Pedigo v. Croom, Tex.Civ.App., 37 S.W.2d 1074; Texas Employers Insurance Association v. Brandon, 126 Tex. 636, 89 S.W.2d 982; Houston Gas & Fuel Co. v. Perry, 127 Tex. 102, 91 S.W.2d 1052. Treating Jones and Martin as employees of Farmer, nothing contained in the Workmen's Compensation Act of Texas precludes these actions against Kelley as a third party tort-feasor whose negligence proximately caused death in one instance and injury in the other. It is the rule in Kansas that the remedies provided by the Workmen's Compensation Act of that state are exclusive when the work-

man and his employer are operating under the act and the injury or death is one within the purview of the act. Shade v. Ash Grove Lime & Portland Cement Co., 92 Kan. 146, 139 P. 1193; Id., 93 Kan. 257, 144 P. 249; Echord v. Rush, 124 Kan. 521, 261 P. 820; Jennings v. Kansas Power & Light Co., 152 Kan. 469, 105 P.2d 882; Bailey v. Mosby Hotel Co., 160 Kan. 258, 160 P.2d 701; Hoffman v. Cudahy Packing Co., 161 Kan. 345, 167 P.2d 613; Duncan v. Perry Packing Co., 162 Kan. 79, 174 P.2d 78; Crawford v. Atchison, Topeka & Santa Fe Railway Co., 166 Kan. 163, 199 P.2d 796. But Jones and Martin were not employees of Kelley and they were not under the Workmen's Compensation Act of Kansas.

Taking up the appeals of the insurance company, error is predicated upon the action of the court in denying the motions to intervene in the actions the second time. Since Farmer and Jones and Martin were under the Workmen's Compensation Act of Texas, and since the insurance contract was issued in Texas and was to be performed there, the rights of the widow of Jones, and Martin, and the insurance company, as between themselves, must be determined by the law of that state. And under the law of Texas where compensation is paid under the Act to an injured employee or the dependents of a deceased workman, the one making the payment or payments is subrogated to the extent of the payments to the rights of the injured workman or the dependents of the deceased workman against a third party tort-feasor whose negligence proximately caused the injury or death. Fort Worth Lloyds v. Haygood, Tex. Sup., 246 S.W.2d 865. It was this substantive right of subrogation to recover as against Kelley which the insurance company asserted in its complaints in intervention attached to the motions to intervene. But the time and manner of asserting such right in the actions pending in the United States Court in Kansas was a procedural matter to be determined by the Federal Rules of Civil Procedure, 28 U.S.C., not the local law of Texas.

Rule of Civil Procedure 24 (a) deals with intervention of right, and it provides among other things that upon timely application anyone shall be permitted to intervene in an action when the representation of the applicant by existing parties is or may be inadequate and the applicant is or may be bound by the judgment in the action, or when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control of the court. Rule 24(b) concerns itself with permissive intervention, and it provides among other things that upon timely application anyone may be permitted to intervene in an action when the applicant's claim or defense and the main action have a question of law or fact in common. And, it further provides that in exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. To authorize an intervention as a matter of right under Rule 24(a) the intervenor must have an interest in the subject matter of the litigation of such a nature that he will gain or lose by the direct legal operation of the judgment. Pure Oil Co. v. Ross, 7 Cir., 170 F.2d 651. Being subrogated in part to the rights of the widow of Jones, and Martin, against Kelley as a third party whose negligence was charged to be the proximate cause of death in one instance and injury in the other, the insurance company had sufficient interest in the subject matter of the litigation to intervene as a matter of right. Deauville Associates v. Eristavi-Tchitcherine, 5 Cir., 173 F.2d 745; Clark v. Sandusky, 7 Cir., 205 F.2d 915. And that right was exercised in full measure when the insurance company intervened the first time. It was then a party to each action and occupied the unfettered position of recovering in full the amount of its payments if the awards of damages against Kelley were

sufficient for that purpose. In other words, it was in position to be reimbursed in whole or in part out of the first money recovered from Kelley, depending upon the amount of the recoveries. But, while in that position, and on the eve of the trial, the insurance company elected to dismiss without prejudice its complaints in intervention. Whether it pursued that course as a means of keeping from the jury evidence relating to the widow of Jones, and Martin, receiving compensation from the insurance company, or whether some other reason underlay the dismissal of the interventions is a matter of no present concern. For reasons satisfactory unto itself, the insurance company dismissed its intervention in each case and that amounted to an abandonment or waiver of its right further to proceed by intervention in the then pending actions.

■ Having intervened once and having voluntarily dismissed its interventions, the motions to intervene the second time and assert the same causes of action which were pleaded in the first complaints in intervention were addressed to the sound judicial discretion of the court and its action in denying them will not be disturbed on appeal unless such discretion was abused. After the return of the general verdicts and the answers to the special interrogatories, Kelley filed a motion to set aside such verdicts and answers and for judgment in his favor notwithstanding the verdicts and findings. The motion was partially heard and rulings were made in respect to portions of it. Following these intermediate proceedings, and more than five months after the return of the verdicts and the findings in response to the special interrogatories but before entry of the judgment, the insurance company, without obtaining leave of court to do so, filed its motions to intervene the second time. In connection with the denial of the motions, the court stated that as the result of the voluntary dismissal of the original complaints in intervention the court with-, plaints in intervention the court with-, held from the jury all evidence pertaining to the payment of compensation; stated that in all probability the trial would have been quite different if the insurance company had not voluntarily withdrawn from the cases for the evidence relating to the payment of compensation would then have been admissible; and stated that the motions to intervene after the return of the verdicts were not made timely. In view of the fact that after being a party to each action, the insurance company voluntarily withdrew and retired to a position behind the curtain, so to speak, and remained there during the trial and for more than five months thereafter, in view of the fact that as the result of such withdrawal the court withheld from the jury evidence which otherwise would have been admitted, and in view of the fact that in the opinion of the trial court the outcome of the trial might have been different if the interventions had not been dismissed, it cannot be said that the motions to intervene the second time were timely or that their denial constituted an abuse of discretion.

■ The remaining contention of the insurance company is that the court erred in denying it recovery in each case for the amount of compensation paid, such recovery to be out of the award against Kelley; and that the court further erred in limiting the judgment in each case against Kelley to the amount of the award of damages, less the aggregate amount of compensation which had been or was to be paid. The law of Texas is relied upon to sustain the contention. It is said that under the law of that state there is but one cause of action in a case of this kind against a third party tort-feasor whose negligence proximately caused or contributed to death or injury; that such cause of action belongs to the injured workman or to the dependents of the deceased workman; that where an insurance carrier has made payments of compensation to the injured workman or the dependents of the deceased workman, it is subrogated to the extent of such

payments to the cause of action against the third party tort-feasor; and that intervention is not necessary to protect the rights of the insurance carrier. In Younger Bros., Inc., v. Moore, Tex.Civ. App., 135 S.W.2d 780, an injured employee under the Workmen's Compensation Act of Texas, instituted the action against a third party whose negligence was alleged to have been the proximate cause of the injury. The insurance carrier who had paid workmen's compensation to the injured employee was not a party to the action. The jury returned a verdict for plaintiff and judgment was entered for the amount of the verdict. On appeal, it was held that the sum of $1,090, representing compensation and doctor's bills paid should be held in trust for the insurance carrier. But in Mitchell v. Dillingham, Tex.Civ.App., 22 S.W.2d 971, the surviving parents of a deceased son sought damages for the death of their son allegedly caused by the negligence of the defendant. The son was an employee of the Texas Produce Company and was under the Workmen's Compensation Act. The insurance carrier made payments of compensation to the parents, and it was not a party to the action. The compensation which had been paid exceeded in amount the verdict for plaintiffs. In view of that fact, the trial court entered judgment that plaintiffs take nothing. No provision was contained in the judgment for the benefit of the insurance carrier. And on appeal, the judgment was expressly upheld. In the later case of Houston Gas & Fuel Co. v. Perry, supra, the action was for damages for the death of an employee who was under the Workmen's Compensation Act. The insurance carrier had made payments of compensation. The alleged tort-feasor and the insurance carrier were joined as defendants. It was alleged by plaintiff that such payments of compensation had been made; that the insurance carrier was subrogated to the extent of such payments to the rights of plaintiff; and that the insurance carrier had failed and refused to file suit under its

rights of indemnity. It was not alleged by plaintiff that she was suing for the use and benefit of the insurance carrier. On the other hand, she affirmatively alleged that she brought the action on behalf of herself and for the benefit of others named. The alleged tort-feasor answered, but the insurance carrier did not. The jury returned a verdict for the plaintiff. The judgment contained a provision that the insurance carrier recover from the tort-feasor under its right of subrogation. The Supreme Court of Texas quoted with unqualified approval from Mitchell v. Dillingham, supra. After doing so, the court held that there being no pleading upon which recovery in favor of the insurance carrier could be predicated, the judgment should be reformed by eliminating therefrom any recovery in its behalf. In the still later case of Fort Worth Lloyds v. Haygood, supra, the Supreme Court of Texas cited with approval both Mitchell v. Dillingham, supra, and Houston Gas & Fuel Co. v. Perry, supra. And in Sunray Oil Corp. v. Allbritton, 5 Cir., 187 F.2d 475, Allbritton was an employee of Oil Production Maintenance, Inc., and he was under the Workmen's Compensation Act of Texas. He sustained injuries as the result of the collapse of an oil derrick belonging to Sunray Oil Corporation. The insurance carrier for Oil Production Maintenance, Inc., made payments of workmen's compensation to Allbritton. And he later instituted the suit against Sunray Oil Corporation to recover damages for his injury. The insurance carrier was not a party to the suit. It sought to protect itself by entering into an agreement with Allbritton that if he would bring the suit, he could recover, and hold for it all sums to which it was entitled to recover against Sunray Oil Corporation by virtue of its rights of subrogation under the laws of Texas. Allbritton recovered for his injury and the judgment made provision for the reimbursement of the insurance carrier for the compensation payments made, the reimbursement to be made out of

the amount awarded to Allbritton. On appeal, the judgment was ordered reformed by reducing it in the amount of the compensation payments made thus eliminating the provision for reimbursement of the insurance carrier. It is manifest that since the insurance carrier was not a party to the actions asserting in conventional manner its right of subrogation, it had no warrant in the law of Texas to recover herein by way of reimbursement out of the damages awarded to the widow of Jones, and Martin, respectively.

The judgment is affirmed.

HUXMAN, Circuit Judge (dissenting).

I concur in the opinion of the court in Numbers 4643 and 4645 but would reverse the judgment in Numbers 4644 and 4646. Some contrariety of view exists in the Texas decisions with respect to the exact cause of action an injured employee may himself maintain where he has received benefits under the Texas Workmen's Compensation Act. This is recognized by the court in Mitchell v. Dillingham, Tex.Civ.App., 22 S.W.2d 971, where the court laid down the principle that where an employee had received benefits under the Act his cause of action was limited to such damages, if any, as he suffered in excess of the amount of compensation insurance collected by him. But the principle announced in the Dillingham case has not been consistently followed by the Texas courts. Thus in Younger Bros., Inc., v. Moore, Tex.Civ.App., 135 S.W.2d 780, the insurance carrier was not joined as a party to the action. The action was maintained solely by the injured employee and he recovered the full amount of damages suffered by him. Thereafter, on appeal, the judgment was modified to provide that to the extent of the amount of the insurance payments made the recovery should inure to the benefit of the insurance company, although not a party thereto.

Had this case been tried on the theory of the Dillingham case; had the trial court received evidence as to the amount of these payments as required thereunder and instructed the jury that it should ascertain the total amount of recovery and then return its verdict for any excess remaining, I would have no difficulty in concluding there was no abuse of discretion in refusing Pacific the right to re-enter the case. But this was not the theory on which the case was considered or tried up to the time the jury returned its verdict. An analysis of the record, to me, warrants the conclusion that the case was tried on the theory that the question of subrogation and Pacific's right to subrogation remained in the case, notwithstanding its withdrawal, and that the injured employee could maintain the action for the total amount of recovery and the court could then enter judgment for Pacific and the injured employee, as required.

That Judge Hill, who granted the motion to withdraw, was of this view would seem to flow from his remarks at the time he sustained the motion. Thus after a discussion apparently dealing with this question, he stated, "Well, I don't think that would remove them. The motion to dismiss will be sustained." That this was also the view of Chief Judge Mellott, who tried the case, would seem to follow from a discussion with counsel prior to a submission of the case to the jury. Thus the court in a discussion with counsel said, "Well, the Court will endeavor to take care of the matter to which reference has just been made by instructing as I think it should instruct, that both of the parties plaintiff in this case were admittedly under the compensation act of the State of Texas and that certain amounts have been awarded and paid under the compensation act of Texas." As pointed out, the court, however, gave no such instruction and tried the case on the theory that subrogation was still in the case and that Pacific was entitled to subrogation and that it could adjust the matter out of the total verdict by the jury. This appears from the court's

statement that, "Under the law of subrogation, a party making payment is subrogated to the rights of the one who is ultimately—who has ultimately caused the injury or damage. In other words * * * what it (the court) tried to say, it's this: That I feel that the carrier who has paid workmen's compensation under the law of Texas is entitled to be subrogated to any recovery had in this case, and the fact that the insurance company has seen fit to intervene in these cases, even though dismissing its complaint in intervention on the eve of the trial, doesn't change the situation, in the Court's opinion, that they are still entitled to subrogation under the Texas statute insofar as may be necessary, * * *." Then referring to the Section of the Act in question, the court said, "That section provides, as I understand it, that only the excess is to be paid to the injured employee, in this case the widow and children of Jones, and Martin as the plaintiff. * * * Well, I suppose the Court can give full effect to the impingement, and probably should, of the compensation acts and the question of subrogation, and I don't suppose it's important that the Court instruct the jury that payments of compensation have been made." That this was the court's theory is also evidenced by the further fact that when it instructed the jury as to the amount of recovery in each case, it instructed the jury to find the total amount of damages suffered by each plaintiff, limited only to the amount prayed for in the complaint in the one case and to $15,000, the amount recoverable for death, in the other.

Had the trial court indicated that subrogation was an issue in the case but that it could not be considered in the absence of Pacific, an application to reenter the case would no doubt have been made and under the theory of the court would have been granted. Since the case was tried on the theory that plaintiff could recover the full amount of damages and that subrogation and Pa-

cific's right to subrogation was in the case and could be taken care of by the court out of the total verdict returned, it was in my view error for the court to deny a re-entry of Pacific into the case after the trial, if thought necessary to effectuate the theory on which the case was tried. This would have been well within the doctrine of Younger Bros., Inc., v. Moore, Tex.Civ.App., 135 S.W.2d 780, where subrogation was granted even where the insurance company had not been in the case at any time and where the case apparently was tried on the theory that the injured employee could recover for himself the total amount of damages.