In the Matter of the Arbitration between NEW YORK MIRROR, a Division of THE HEARST CORPORATION, Respondent, and M. MICHAEL POTOKER, Secretary-Treasurer, New York Newspaper Guild, Local 3, Appellant.

First Department, March 25, 1958.

424

*H. Howard Ostrin* of counsel (*Arthur Kamell* and *Eugene N. Sosnoff* with him on the brief; *Cooper, Ostrin & De Varco*, attorneys), for appellant.

*John B. Siefken* of counsel (*McCauley, Henry & Brennan*, attorneys), for respondent.

McNALLY, J.   Respondent-appellant has served upon the petitioner-respondent a demand for arbitration of the claim that the collective bargaining agreement between the parties applies to seven named photographers.   The collective bargaining contract is for the period from November 1, 1956 to October 31, 1958.   Petitioner-respondent opposes arbitration on the grounds that the alleged grievance or dispute is not an arbitrable issue, and is not within the scope of the arbitration clause of the agreement.

Respondent-appellant, the bargaining representative of certain employees of the petitioner-respondent, was so certified by the National Labor Relations Board in 1938.   Although petitioner-respondent has employed independent photographers since June, 1924, the respondent-appellant did not assert the right of representation as to them until July 2, 1957.   The collective bargaining agreement provides, in part, as follows:

SECTION 3.   The term 'employee' as used in this contract, does not include contributors on a free lance basis whose products, such as news stories, feature stories, cartoons, art work and photographs are purchased by the Publisher.

The contract provisions relating to grievances and arbitration are as follows:

SECTION 14 — ADJUSTMENT OF DISPUTES

A Grievance Committee designated by the Guild shall be established to settle amicably with the Publisher or his authorized representatives all grievances arising from the application of this agreement.

The parties agree to meet within five (5) days after notification by either side that it has a grievance open for discussion.   The moving party shall state the nature of the grievance in writing in advance of the meeting.

If the parties fail to adjust the dispute within thirty (30) days after the initiation of the grievance procedure, it shall, upon motion of either party, be referred to arbitration under the voluntary labor arbitration rules then obtaining of the American Arbitration Association. Such arbitration shall be by an arbitration board consisting of two members appointed by the Guild and two members appointed by the employer and an impartial chairman selected by the American Arbitration Association according to its rules. The Arbitration Board's award shall be final and binding.

The petition alleges and the respondent-appellant does not dispute the following facts: The content of section 3 has been in all collective bargaining contracts between the parties since 1938. The photographers involved furnish photographs to the petitioner which it may or may not purchase. The photographers purchase their own cameras and supplies for which they are not reimbursed; they are not covered by workmen's compensation, unemployment insurance or withholding income tax; they submit to petitioner their own bills for the photographs; they own, operate, insure and maintain the automobiles used by them in obtaining photographs; they have no definite hours of work for the petitioner and are not required to report for work at any time; and they receive no hourly, daily, weekly or any guaranteed compensation and their names are not on the petitioner's payroll. Petitioner-respondent is not concerned with the means whereby the photographs are taken but concerns itself solely with the end product, that is, the photographs taken and submitted to it.

The respondent-appellant, on the other hand, asserting that the seven photographers are not free lance photographers, adverts to the following:

" (a) The Employer makes direct assignments to some, or all of these individuals from the desk, often over a two-way radio.

" (b) During the month of August one of these individuals had more pictures printed in the New York Mirror than did any admitted employee photographer.

" (c) Some, or all of these individuals have two-way radios in their cars for which they are required to have Police Department permits. These permits will not be issued unless the persons seeking them hold press cards and present certification from the editor that they represent the newspaper.

" (d) Some, or all of these individuals also hold highly cherished special parking cards issued by the Police Department to those persons whose names appear on a select list furnished by the Employer.

" (e) Some, or all of these individuals have New York Press Registration Licenses which they obtained from the Motor Vehicle Bureau after the Employer had put in a request for them.

" (f) On certain hours of the day or night some, or all of these individuals furnish the only photographic coverage the Employer has for given boroughs of the city.

" (g) Some, or all of these individuals appear to work exclusively for the Employer."

Whether an arbitrable dispute is present is a matter of law to be determined by the court. In that determination the inquiry is whether there is any basis for the claim underlying the asserted dispute. A frivolous claim will not move the court to compel arbitration. (*Matter of Wenger & Co.* v. *Propper Silk Hosiery Mills,* 239 N. Y. 199, 202.) A dispute is not arbitrable if it is grounded on an asserted interpretation of the agreement contrary to unambiguous provisions thereof. (*Matter of General Elec. Co. [United Elec. Radio & Mach. Workers],* 300 N. Y. 262.)

Under well-established legal principles, the photographers, around whom this alleged dispute revolves, are independent contractors and not employees. (*Hexamer* v. *Webb,* 101 N. Y. 377; *Matter of Beach* v. *Velzy,* 238 N. Y. 100; *Matter of Boardway* v. *Kellas,* 258 N. Y. 545; *People ex rel. Feinberg* v. *Chapman,* 274 App. Div. 715.) Nevertheless, the parties were at liberty to include them within their definition of " employee ". (*Matter of Wenger & Co.* v. *Propper Silk Hosiery Mills, supra.*) We are required to decide whether that was done.

Section 3 of the collective bargaining agreement excludes from the ambit of " employee " those whose " photographs are purchased by the Publisher ". The photographers here involved do not meet the objective test formulated by the parties. The factors adverted to by the respondent as probative on the issue involved do not serve to alter the fact that the photographs of the said photographers were purchased by and they received no other remuneration from the petitioner. That the making of the photographs may have been preceded by direct assignments from the petitioner, possibly over a two-way radio; or that the two-way radios in the cars owned by the photographers required police permits based upon certification from the petitioner's editor that they represented the petitioner's newspaper; or that these individuals held special parking cards issued by the Police Department because their names were on a select

list furnished by the petitioner; or that they possessed registration licenses obtained from the Motor Vehicle Bureau denominated press registration licenses and resulting from a request by the petitioner are all irrelevant on whether in the light of the objective test therein provided the said photographers are free lance photographers within the meaning of section 3 of the collective bargaining agreement. None of the said factors is relevant on whether in the light of section 3 these photographers are employees within the scope of the collective bargaining agreement, the ultimate issue herein. The other factors relied on by the appellant are equally irrelevant. The mere assertion of a dispute, unsupported by facts, does not establish the existence of a bona fide arbitrable issue. (*Matter of Essenson* [*Upper Queens Med. Group*], 307 N. Y. 68.) Moreover, if the dispute involves the interpretation of the agreement wherein is found the arbitration clause, then, even though the scope of the latter enables the arbitrator to resolve a disputed construction, if the language of the agreement permits of only one tenable construction, there is no arbitrable dispute as a matter of law. (*Matter of General Elec. Co.* [*United Elec. Radio & Mach. Workers of America*], *supra*; *Alpert* v. *Admiration Knitwear Co.*, 304 N. Y. 1; *Matter of International Assn. of Machinists* [*Cutler-Hammer, Inc.*], 271 App. Div. 917, affd. 297 N. Y. 519; *Matter of Sarle* [*Sperry Gyroscope Co.*], 4 A D 2d 638.)

Respondent-appellant concedes that the determination of the question here involved turns on the interpretation of the collective bargaining agreement. The opposing affidavit, sworn to October 1, 1957, states:

" 15. The issue of whether a person who furnishes labor to the Employer is an employee or a free-lance contributor, or something else, is an issue which can be decided only by interpretation of the agreement. In short, the issue in this proceeding is: are one or more or all of the seven photographers employees or are they ' contributors on a free-lance basis,' as that term appears in Section 3 of the agreement?"

We have assumed that the scope of the arbitration clause includes a dispute involving the interpretation of the provisions of the collective bargaining agreement. We find, however, that the grievance and arbitration clause is of limited scope. Section 14 of the collective bargaining agreement provides for the amicable settlement of " all grievances arising from the application of this agreement." Failure of adjustment of grievances is to be followed by arbitration upon motion of either party. It will be noted that the grievances within section 14 are those

" arising from the application of this agreement ". No provision is made for grievances relating to " interpretation ", nor does the grievance and arbitration machinery apply to any dispute arising from or relating to the collective bargaining agreement. We may not ignore the limitation adopted by the parties in defining the scope of the grievances subject to settlement and arbitration for it is well established that an express agreement to arbitrate clearly assented to is required and will not be implied. (*Matter of Lehman* v. *Ostrovsky*, 264 N. Y. 130; *Matter of Kelley*, 240 N. Y. 74; *Matter of Eagar Constr. Corp.* v. *Ward Foundation Corp.*, 255 App. Div. 291.)

The " application of this agreement " necessarily involves the comparison of the collective bargaining agreement with a complex of external facts. There are here present an external complex of facts and a collective bargaining agreement. The question is: Does the right to apply the agreement to the facts pertaining to the photographers involved include the right to interpret the provisions of the collective bargaining agreement? We feel that the answer must be in the negative in the absence of express provision unambiguously subjecting the interpretation of the collective bargaining agreement to arbitration.

No case cited to us involved an arbitration clause similarly limited as section 14 of the agreement herein. The cases relied on by the appellant did not involve an arbitration clause such as is presently before us and are otherwise distinguishable. In *Matter of Kraft Foods Co.* (*Coughtry*) (204 Misc. 959, affd. 282 App. Div. 1090) the written contract provided for arbitration of " any dispute or misunderstanding concerning the application or interpretation of the provisions of the collective bargaining agreement." The court there did not find it necessary to distinguish between " application " and " interpretation " since they were both embraced within the provisions of the arbitration clause. Here, on the other hand, section 14 limits itself to grievances arising from the " application of " the collective bargaining agreement.

In *Matter of Rugen* (*North Amer. Philips Co.*) (20 Labor Arbitration Reports 878, affd. 282 App. Div. 931, motion for leave to appeal granted 306 N. Y. 688 [appeal withdrawn Jan. 18, 1955]) the agreement provided for the settlement of all differences, disputes and grievances that may arise between the union and the employer and for the submission to arbitration thereof in the event of failure of settlement. The provision for arbitration in *Rugen* was patently of greater scope than the one here involved and included therein a dispute with regard to the interpretation of the collective bargaining agreement.

*Matter of Royal Typewriter Co. (Mechanical & Elec. Workers Union)* (2 Misc 2d 159, affd. no opinion 277 App. Div. 982) involved an arbitration clause which provided, in part, as follows: " The decision in arbitration shall be rendered in writing stating the reasons for the interpretation of the agreement and its application to the particular case ". The significance of this case is twofold. In expressly providing for the interpretation of the agreement on the part of the arbitrators, the *Royal* agreement distinguishes itself from the one here involved and, in providing conjunctively for the right on the part of the arbitrators to determine the application of the collective bargaining agreement to " the particular case ", the *Royal* agreement recognizes the distinction between interpretation and application with which we are presently concerned. None of the other cases cited to us by the appellant supports the contention that an arbitration clause providing for the arbitration of grievances relating to the application of the agreement of which it is a part includes within its scope a dispute relating to the interpretation of the agreement.

If we assumed for the purpose of this decision that the arbitration clause herein reaches a dispute involving the interpretation of the collective bargaining agreement, we, nevertheless, would conclude there is no arguable basis for the appellant's asserted interpretation of section 3. Were the facts adverted to by the appellant given effect in the interpretation of section 3, then we would acknowledge a possible basis for a determination in arbitration including the photographers here involved within the category of employees of the petitioner, which would serve to nullify the provisions of section 3 of the collective bargaining agreement. To enable such a result would do violence to the agreement of the parties.

We conclude, as a matter of law, that appellant has failed to establish an arbitrable dispute within the terms of the arbitration clause of this agreement.

The order staying arbitration and denying the cross motion to compel arbitration should, therefore, be affirmed, with costs.

BOTEIN, P. J. (concurring). The question presented here is not whether these photographers are employees within the contemplation of the tangled laws of master and servant, but whether they are " employees " within the contemplation of section 3 of the collective bargaining agreement. Their status under the contract, and not their common-law or statutory status, determines whether they are touched by this agreement. For example, the draftsmen could have embraced independent

free-lance photographers within the term " employee ", and in such event, they would be covered by the terms of the agreement. Similarly, such indubitable employees as salaried lithographers and pressmen could be expressly excluded from the operation of the contract's provisions.

The parties, however, went to some pains specifically to exclude persons performing the work of the photographers involved in this application. They skillfully sought to avoid any future involvement in the employee-independent contractor maze by the simple and direct expedient of delimiting the categories of employees under the contract — so that the term " employee " clearly and unequivocally excluded persons doing the type of work performed by these photographers. The draftsmen accomplished their purpose so well that the seven persons involved herein are excluded " from the application of this agreement " as effectively as though they were photographers working for the London *Times*.

The dispute is not referable to the contract, and arbitration should not lie.

BREITEL, J. (dissenting). This case involves the arbitrability of a disputed question tendered for arbitration by a labor union under a collective bargaining agreement with a newspaper publisher. The labor union is the collective bargaining agent for the newspaper's commercial and editorial department employees. The dispute is whether certain photographers are free lance contributors of the newspaper, expressly excluded from the collective bargaining agreement; or whether, in fact, they are covered employees. The publisher contends that by reason of the exclusion clause the dispute is not arbitrable.

Special Term and a majority of this court agree with the publisher; and this court is affirming the order staying the arbitration and denying the cross motion to compel arbitration. I am constrained to dissent and conclude that the order should be reversed, the stay denied, and the motion to compel arbitration granted.

Section 3 of the collective bargaining agreement, first signed in 1938, provides:

The term 'employee' as used in this contract, does not include contributors on a free lance basis whose products, such as news stories, feature stories, cartoons, art work and photographs are purchased by the Publisher.

Section 14 of the agreement provides for the settlement of disputes, first by grievance committee, and on failure thereof, by arbitration, " of all grievances arising from the application of this agreement."

In resisting arbitration, the publisher has averred that the photographers in question are free lance contributors because: (1) they purchase their own equipment and supplies; (2) none is covered by workmen's compensation insurance, unemployment insurance, and their income taxes are not withheld; (3) they submit bills at standard rates; (4) none receives periodic compensation or any guaranteed minimum; (5) they use and maintain their own automobiles; (6) some work also for others; (7) they have no definite hours; (8) their services are used irregularly; and, (9) the publisher is only interested in the product rather than in the means by which it is obtained.

None of these circumstances, all of which the publisher urges indicate free lance status, are denied in the answering papers submitted by the union. Rather the union asserts a number of other factors which it contends establish that all or some of these persons are employees rather than free lance contributors. The union avers that: (1) the publisher makes direct assignments; (2) these photographers often have more of their pictures used than do the regular employee photographers; (3) some hold Police Department and Motor Vehicle Bureau permits and special parking cards supplied only on certification of the publisher; (4) at certain hours these photographers provide the only photographic coverage in certain boroughs of the city; and, (5) some or all of them appear to work exclusively for the publisher.

As recently pointed out by the Court of Appeals, the issue in a matter of this kind is not whether the party demanding arbitration is right, but whether it is entitled to have the issue determined in the forum designated in the agreement (*Matter of Potoker* [*Brooklyn Eagle*], 2 N Y 2d 553, 560). Consequently, it is immaterial and improper for a court to determine whether, on the tender of competing indicia pointing toward free lance status or regular employment, one side or the other is right or wrong. Only when it appears that it is " beyond dispute " that the issue tendered is outside the scope of the agreement or depends upon an express contradiction of unequivocal or unambiguous terms of the agreement has it been said that the issues are not arbitrable as a matter of law, on a preliminary finding by the court (*Matter of General Elec. Co.* [*United Elec. Radio & Mach. Workers*], 300 N. Y. 262; *Matter of International Assn. of Machinists* [*Cutler-Hammer, Inc.*], 271 App. Div. 917, affd. 297 N. Y. 519; *Matter of Sarle* [*Sperry Gyroscope*], 4 A D 2d 638).

Before proceeding to a discussion of whether or not the issues tendered are clearly "beyond dispute", reference should be made to the arbitration clause. In this agreement the matters subject to arbitration are grievances arising from application of the agreement. Whether this language is narrower or broader than other arbitration clauses is immaterial. That is because the very dispute involved in this case is one of the "application" of the agreement. There is no dispute about the language of the agreement, the meaning of its clauses, performance under the agreement, or whether the arbitration provision survives cancellation or other termination of the agreement. Thus, also, this case does not involve an arbitration exclusion clause which delimits certain areas of disputes, while leaving others subject to arbitration.

The only question tendered for arbitration is whether the agreement applies to some seven persons, whom the union claims are employees, and whom the publisher claims are free lance contributors. Once the status of free lance contributor or employee is determined for each of these seven persons, or some of them, the consequences flow under the express terms of the agreement, without further disagreement between the parties. The simple question is whether these photographers are members of a class concededly excluded from the agreement. This may involve disputed evidentiary facts; or it may involve dispute as to the inferences drawn from disputed or undisputed facts; or it may involve a question of law alone. (*Braxton* v. *Mendelson,* 233 N. Y. 122, 124; 56 C. J. S., Master and Servant, § 13.) But all these questions are arbitrable, if the agreement so provides, and there is a bona fide dispute. (*Matter of Spectrum Fabrics Corp.* [*Main St. Fashions*], 285 App. Div. 710, 714, affd. 309 N. Y. 709.)

Turning now to whether there is a bona fide dispute involving the application of the collective bargaining agreement, it is not controlling that the union does not contradict the several indicia relied upon by the publisher to substantiate its conclusion that these photographers are free lance contributors. No one indicium, or any combination of indicia, is controlling. (Restatement, Agency, § 220, in which some nine indicia are set forth, and the restaters conclude that the relationship of master and servant is one not capable of exact definition [comment b]; 56 C. J. S., Master and Servant, *supra,* § 3 (1) *et seq.*) It is hardly arguable now that with respect to many classes of persons, concerning whose employment status there may be no dispute as to the evidentiary facts, it has been for many years

(and in many different contexts) a highly controversial question whether such persons are, in law or in ultimate fact, employees or independent contractors.

Whether newsboys, the evidentiary facts being largely undisputed, are employees or independent contractors, for purposes of the National Labor Relations Act, has been held by the Supreme Court of the United States to be a controversial question determinable by the National Labor Relations Board. (*Board* v. *Hearst Publications*, 322 U. S. 111.) In that case, the court commented that there is no simple uniform and easily applicable test which the courts may use. It was said: "Only by a long and tortuous history was the simple formulation worked out which has been stated most frequently as 'the test' for deciding whether one who hires another is responsible in tort for his wrongdoing. But this formula has been by no means exclusively controlling in the solution of other problems. And its simplicity has been illusory because it is more largely simplicity of formulation than of application. Few problems in the law have given greater variety of application and conflict in results than the cases arising in the borderland between what is clearly an employer-employee relationship and what is clearly one of independent, entrepreneurial dealing." (Pp. 120–121.)

Thus, a canvasser employed on a commission basis was held, in tort, to be the employee of the company from whom he received direction. (*Singer Mfg. Co.* v. *Rahn*, 132 U. S. 518.) The close question involved in determining whether several categories of so-called independent contractors were subject to the Social Security Act as employees was considered in *United States* v. *Silk* (331 U. S. 704), and a different result reached as between coal unloaders and truck drivers, both classes of whom were hired, without regularity, on a piecework basis, using their own equipment. In this State, it has been held that so-called independent milk salesmen, as well as taxicab drivers, using the "employer's" equipment were employees for purposes of the Workmen's Compensation Law (*Matter of Glielmi* v. *Netherland Dairy Co.*, 254 N. Y. 60). So, too, the Court of Appeals was faced with a difficult question whether a corsetiere, operating as an itinerant on a contract basis with a manufacturer, but buying and selling on a cost-profit basis, was an employee or an independent contractor within the meaning of the Unemployment Insurance Law. (*Matter of Morton*, 284 N. Y. 167.) In that case, the court said: "The question to be reviewed by us is not whether claimant was an employee of respondent as a matter of fact, but whether upon the basis of the record before us

we must decide as a matter of law that claimant was not an employee. Neither the duty nor the power to weigh the evidence rests with the courts, for that function, by virtue of the statute, has been imposed upon the administrative authority acting in a quasi-judicial capacity.'' (Pp. 169–170.) It was said further: '' From the nature of the problem, the degree of control which must be reserved by the employer in order to create the employer-employee relationship cannot be stated in terms of mathematical precision, and various aspects of the relationship may be considered in arriving at the conclusion in a particular case.'' (P. 173.)

Substitute in these last few cases the arbitration tribunal for that of the administrative agency and their application to the problem in this case becomes irresistible, except, of course, that with respect to an arbitrator's proper jurisdiction, there is no judicial review. The matter could be pursued in much greater detail. But it is rather obvious, as pointed out by the Supreme Court, that the status of many persons in our economy, as to whether they are employees or independent contractors, is one of the most troublesome questions with which the courts are continually faced. Therefore, to say of such an issue, that it is '' beyond dispute '' that the photographers in this case are one or the other is hard to accept.

Nor does the presence of the express provision in the agreement excluding free lance contributors dispose of the issue. That provision has inevitable effect, but only after there has been an initial determination — by the tribunal chosen by the parties — as to whether these photographers are members of the excluded class of free lance contributors (*Matter of Teschner* [*Livingston*], 285 App. Div. 435, affd. 309 N. Y. 972; *Matter of Acme Backing Corp.* [*Dist. 65*], 2 N Y 2d 963). In the *Teschner* case the employer, by express agreement had an absolute right to go out of business. It was further provided that '' such right shall not be questioned by the Union ''. The question was held arbitrable as to whether the employer had in fact gone out of business, or continued business through the device of a newly formed corporation, although it could not be disputed that he had a right to go out of business. (See, also, *Matter of Sarle* [*Sperry Gyroscope*], 4 A D 2d 638, *supra,* in which this court very recently held that a resignation would terminate the employee's rights but that, nevertheless, the question was arbitrable whether in fact there had been a voluntary resignation.)

When one examines the several indicia of free lance status and that of employee status suggested by the adversary parties in this case one might well come to a conclusion favorable to the publisher — or, perhaps, to the union. But that is not the court's province. That is for the arbitrator. If there is a bona fide dispute, it does not devolve upon the court to say that as a matter of law there is nothing to arbitrate (*Matter of Wenger & Co. v. Propper Silk Hosiery Mills*, 239 N. Y. 199, 202–203); even if it is apparent that if the question were properly before the court, it could be summarily determined. Moreover, there is not a sufficient record here to make so critical a determination with respect to the entire class, let alone with respect to any given member of the seven for none of whom separate facts are given. And, of course, there is no occasion for such a record being presented to the court on a motion made pursuant to section 1450 or 1458 of the Civil Practice Act. Such a showing on the merits, however, would undoubtedly be made for the arbitrator.

What is required upon this application, and what is present, is that there appears to be a dispute as to the application of the collective bargaining agreement. That is determined from the agreement and the tendered dispute. To require more is to assert a new condition precedent to arbitration: namely, that the one who demands arbitration have a prima facie case on the merits; or worse, a case that indicates probability of success.* (But, see, *Matter of Essenson [Upper Queens Med. Group]*, 307 N. Y. 68, as to prima facie case to show "arbitrability" as distinguished from the merits.)

The question of the status of the seven depends upon all the circumstances that must be inquired into, turning upon addi-

---

* But assuming that the question is pursued further, although it would not seem proper that one should, it is quite obvious that the fact that the publisher has treated these photographers as independent contractors for purposes of taxation, workmen's compensation, unemployment insurance, and social security, may be quite immaterial. Indeed, were it to be established, by arbitration or otherwise, that these photographers are employees, then the publisher might well have difficulty in maintaining their status as nonemployees before these very agencies. The question then becomes when is one entitled to break into the circle. (Restatement, Agency, *supra*, § 220 and comments; 56 C. J. S., Master and Servant, *supra*, § 3(1) *et seq.*) So, too, it might be quite immaterial that the publisher provides these photographers with the necessary certifications to obtain press cards and other press identifications. Nor would it be necessarily dispositive of the issue before the arbitrator that the publisher has historically characterized these photographers as free lance contributors, which characterization has gone unchallenged by the union for years. The relationships may have changed with time.

tional evidentiary proof of the degree of control, responsibility and obligations which subsist between the publisher and these photographers. The question may well prove to be an easy one — or a difficult one — for the arbitrator; as it might well prove to be an easy one or a difficult one for a workmen's compensation board, a labor relation board, or an unemployment insurance appeals board. So, too, it might for a court, determining a tort action brought by an injured person against one of these photographers who, while operating his own automobile, struck the plaintiff, on his way to perform an assignment given by the publisher.

Actually, when the question of arbitrability is raised on a motion to compel or stay arbitration, the court's jurisdiction is strictly statutory (Civ. Prac. Act, §§ 1450, 1458). There are two questions: Is there an agreement to arbitrate? Is there a dispute under the agreement? The court is not concerned with whether the one who demands arbitration has a good case, a poor case — or for that matter, any case at all. What the *General Electric* and *Cutler-Hammer* cases (300 N. Y. 262; 271 App. Div. 917, affd. 297 N. Y. 519, *supra*), teach us, is that the courts will not accept as a dispute within an arbitration agreement a bare-faced verbalization purporting to come within the agreement, or a dispute tendered on grounds flatly contradicting expressed unambiguous language in the agreement. When the court finds that the tendered issue is " beyond dispute ", it is concluding the analysis, not beginning one. This should not confuse us here. Whether the seven photographers are free-lancers is the arbitrable dispute, not whether free-lance photographers are excluded from the collective agreement.

This court, in *Spectrum Fabrics Corp.* [*Main St. Fashions*], (285 App. Div. 710, affd. 309 N. Y. 709, *supra*), epitomized the scope of arbitration, and it bears repetition: " When parties agree to arbitrate, they agree to waive the rules of evidence and the inexorable application of substantive rules as well. This may not always be wise, but it is within the powers of the contracting parties, and it is the import and essence of an arbitration agreement. It distorts the purpose of arbitration for courts to censor the issues that arbitrators may consider before the courts will permit an arbitration to proceed. The statute is clear in confining the court's function to determining (1) the existence of an agreement or submission to arbitrate, and (2) the existence of an issue referable to the agreement (Civ. Prac. Act, §§ 1450, 1458). * * * The fact is that an agreement to arbitrate, as authorized by statute, is a contractual

method for settling disputes in which the parties create their own forums, pick their own judges, waive all but limited rights of review or appeal, dispense with the rules of evidence, and leave the issues to be determined in accordance with the sense of justice and equity that they may believe reposes in the breasts and minds of their self-chosen judges. All this they choose for themselves, subject only to the statutory grounds for vacatur of the award, as set forth in section 1462 of the Civil Practice Act. This violates no policy. The statute authorizes it. Its wisdom is not for the courts to dispute." (Pp. 714–715.)

Whether the union has a good case, a bad case, or no case at all, is not for the court to determine, but the arbitrator.

Accordingly, for the reasons set forth, I dissent and vote to reverse the order granting the motion to stay arbitration and denying the cross motion to compel arbitration, as a matter of law.

VALENTE and STEVENS, JJ., concur with McNALLY, J.; BOTEIN, P. J., concurs in result in opinion; BREITEL, J., dissents in opinion.

Order affirmed, with $20 costs and disbursements to the petitioner-respondent.